# The Chicago, Rock Island & Pacific Railway Company
## v. Joseph H. Strong, Administrator.
### Gen. No. 12,700.

1.   Vice-principal—*when question as to whether employe is, for jury.*   Where the evidence is conflicting, it is for the jury to say whether an employe performing a certain line of duties is a vice-principal or a fellow-servant.

2.   Servant—*when entitled to recover for injuries sustained in obeying orders of foreman.*   Where a servant is ordered by his foreman to go between cars and make them ready for coupling, he has a right to assume that his foreman, who gave such order, will not, without notice or warning to him, back up the engine and thereby make the work which he has been commanded to do, unsafe, and if the cars are moved without warning to him, and he is injured, he is entitled to recover.

Action on the case for death caused by alleged wrongful act. Appeal from the Superior Court of Cook county; the Hon. Joseph E. Gary, Judge, presiding.   Heard in the Branch Appel-

late Court at the October term, 1905.   Affirmed.   Opinion filed October 23, 1906.

CALHOUN, LYFORD & SHEEAN, for appellant;  W. T. RANKIN and BENJAMIN S. CABLE, of counsel.

JAMES C. McSHANE, for appellee.

MR. JUSTICE BAKER delivered the opinion of the court.

This is an action brought against the defendant railroad company for wrongfully causing the death of John F. Chapman, plaintiff's intestate, in which the plaintiff had judgment and the defendant appealed.

Chapman at and for sometime before his death was a member of a switching crew in the service of the defendant, consisting of an engineer, fireman, O'Brien, conductor or foreman, Wishart, head switchman, who worked near the engine, and deceased, who worked in the field and was known as rear switchman. This crew took to the Rosenbaum elevator on the morning of a certain day twelve loaded cars. Through this elevator and extending some distance beyond it on either side were two tracks running east and west, of which No. 1 was the north and No. 2 the south track. In the afternoon of the same day, the same crew took another train of twelve loaded cars to the same elevator, backing in from the west on track 2. At that time the twelve cars which had been taken to the elevator in the morning had been unloaded and stood, not coupled together, on track 2, three of them in the elevator and the remainder west of the elevator. On the way to the elevator the conductor stated to the other switchman what was to be done at the elevator, namely, that the loaded cars would be backed in on track 2, driving the empty cars together and coupling them, and they would then pull the empty cars out of the way and put in their place

the twelve loaded cars then attached to the engine. The empty cars on track 2 stood two or three feet apart and were equipped with automatic couplers so constructed that when the knuckles of the couplers were raised and in proper position, by backing the train of loaded cars against the empty cars, driving one car against another, the latter would all be coupled together. O'Brien told deceased that when their train reached the empty cars and stopped, deceased should go along the empty cars and open the knuckles of the couplers, and when he had the knuckles of all of the cars open and in proper position he should signal that he was ready and that he, O'Brien, would then give the signal to the engineer to back up. Some minutes after the engine stopped, O'Brien, standing on the third empty car west of the elevator, gave to Wishart, who stood on the ninth loaded car from the engine, the signal to back up. Wishart repeated the signal to the engineer, who at once backed his engine, backing the loaded cars against the empty cars and driving the latter together for the purpose of coupling them together. In so doing the deceased was caught between the drawbar of the car farthest from the engine and of the car next to it, and killed.

O'Brien testified that he opened the knuckles and adjusted the coupling devices provided to couple the cars between which Chapman was killed, and when he had done so said to Chapman, "All right, John, we are going to back out and couple up," and that Chapman replied, "All right, let them come;" that he, O'Brien, then mounted a car and gave Wishart the signal to back up without any knowledge that deceased was then between said cars. This testimony was contradicted by several witnesses for the plaintiff who testified that O'Brien did not go between said cars or between any of the empty cars in the elevator, and upon the oral argument it was conceded by appellant's counsel that the jury were warranted in finding from

the evidence that O'Brien did not go between the cars in the elevator, did not have any such conversation with deceased as he testified to, and that he gave the signal to back up without any signal from the deceased or notice from him that the knuckles were all opened or the cars ready to be coupled together.

Clearly, it was an improper and negligent act for O'Brien, after ordering the deceased to open the knuckles of all of the empty cars on track 2, to give a signal to the engineer to back his train upon that track without receiving a signal from deceased or notice that he had opened all the knuckles, or that the cars were ready to be coupled together.

The contention of appellant's counsel is, not that the jury were not warranted in finding from the evidence that O'Brien was guilty of negligence which caused the death of the deceased, but that O'Brien and deceased were fellow-servants and that the negligent order of O'Brien to back up the engine, was an order given, an act done, by O'Brien in his capacity of colaborer and fellow-servant with the deceased and the other members of the crew, and that for that reason the defendant company, the common master, was not liable.

O'Brien acted in a dual capacity, as fellow-servant with the other members of the crew, and as vice-principal. If he had negligently transmitted a signal given to him by Chapman, as if Chapman had given a signal for the engineer to go forward and O'Brien had negligently transmitted it as an order to back up, such order would be an order given, an act done, by O'Brien in his capacity of fellow-servant.

The three cars counting from the east were all in the elevator. If O'Brien did not go between those cars he could not know whether the knuckles on those cars had been raised for coupling, of his own knowledge. It was Chapman's duty to raise the knuckles on those cars and make them ready for coupling, and

O'Brien, in his capacity of fellow-servant with Chapman, had no right or authority to give the signal to back up until he received such signal from Chapman or was in some manner notified by Chapman that the cars were ready. But O'Brien was in control of the crew and had authority to give orders to the engineer, and the question whether his act in giving the signal to back up was the act of a vice-principal or the act of a fellow-servant with the deceased was, we think, a question of fact for the jury. C. & E. I. R. R. Co. v. Driscoll, 207 Ill. 9-15, and cases there cited.

But the judgment may, we think, be affirmed upon another ground. The second count of the declaration alleges that: "Said foreman then and there ordered and directed deceased to adjust the couplers between two of said cars, to do which the plaintiff alleged said foreman knew, or by the exercise of ordinary care might have known, that deceased would or might be required to go or pass between said cars, and deceased, in the discharge of his duty and in obedience to said order or directions, then and there undertook to adjust said couplers, and in doing so was required to pass between said cars in the discharge of his duty, and while, as the plaintiff alleges, deceased was exercising ordinary care and caution for his own safety, defendant's said foreman then and there wrongfully and negligently ordered and caused said engine to shove said cars between which deceased was as aforesaid, violently together, whereby deceased was then and there caught and so crushed and injured between said cars that he died as a result thereof a short time afterwards."

O'Brien in his capacity of foreman ordered Chapman to adjust the couplers on the empty cars. To do this Chapman must go between the cars. While Chapman was engaged in performing this work, O'Brien gave the order to back up and in consequence thereof Chapman was caught between the cars and killed.

In Norton Bros. v. Nadebok, 190 Ill. 595, Banning operated a certain machine and Nadebok was his helper. One of the pieces of tin which Banning had fed into the machine to be shaped got caught in the machine. Banning stopped the machine and ordered Nadebok to take the piece of tin, called a "catch," out of the machine. While the latter was in the act of doing so, Banning started the machine and Nadebok's hand was caught in the machine and injured, and a judgment in his favor against the common master of Banning and himself was affirmed.

In that case it was said, p. 603: "The giving of the order to appellee to remove the 'catch' and the act of starting the machine occurred so closely together that the consequences resulting therefrom cannot be separated, and the master is liable therefor." The causal connection between the giving of the order, the starting of the machine, and Nadebok's injury in that case was no more close, direct, or immediate than was that connection between the giving of the order, the backing up of the engine and Chapman's injury and death in this case.

In the same case it was said (p. 600): "When appellee was ordered by his superior servant to put his hand in the machine and remove the 'catch,' in the absence of any warning or notice, he had the right to assume that his superior, who gave the order, would not by his own negligence make the act which he had commanded him to do and which he was bound to obey, unsafe." In this case, when Chapman was ordered by his foreman to go between the cars and make them ready for coupling, he had the same right to assume that his foreman, who gave him the order, would not without notice or warning to him, back up the engine and thereby make the work which he had commanded him to do, unsafe; that Nadebok, in the case cited, had to assume that Banning would not without warning to him start the machine which caused the injury in that case. See also, Met. W. S.

El. R. R. Co. v. Skola, 183 Ill. 454; Consol. Coal Co. v. Fleischbein, 207 *ib.* 595; Taylor v. E. & T. H. R. R. Co., 121 Ind. 124.

The judgment of the Superior Court will be affirmed.

*Affirmed.*