268 P.2d 323

## CITY OF PHOENIX v. LOPEZ.
### No. 5725.

Supreme Court of Arizona.
March 22, 1954.

Rehearing Denied June 15, 1954.

Laurence H. Whitlow, City Atty., Jack D. H. Hays, George T. Fike, Arthur B. Parsons, Jr., Asst. City Attys., Phoenix, for appellant.

V. L. Hash and Virginia Hash, Phoenix, for appellee.

LA PRADE, Justice.

This is an appeal by the City of Phoenix from a judgment for $10,000 secured by the personal representative of the estate of Helen Lopez, deceased, for the claimed unlawful death of his decedent, alleged to have been proximately caused by the negligent manner in which the city maintained its streets. The death had its origin in an automobile accident at the intersection of West Van Buren Street and 19th Avenue in the City of Phoenix at 1:00 a. m. on March 7, 1946. At this time and place the deceased was a guest passenger in an automobile being driven east on West Van Buren and approaching 19th Avenue where the two streets intersected each other at right angles. Approximately 36 feet west of the west boundary line of 19th Avenue

the Santa Fe Railroad maintained a single track running north and south parallel to 19th Avenue. The roadbed of this track was 4½ feet higher than the street level at the center of the intersection. The incline up to the track began at a point 90 feet west of the track. The track was 65 feet from the center of the intersection. 19th Avenue north of Van Buren Street was 66 feet wide, the paved portion being 36 feet wide, and the paved portion south of Van Buren Street being 22 feet in width.

The paved portion of West Van Buren for some blocks west of the track was 56 feet in width. At a point 80 feet west of the track the pavement began to narrow, the loss in width coming off the south side of the street until at the track it was approximately 52 feet in width, a loss in width of 4 feet.

The north curb line of Van Buren east of 19th Avenue was 8 feet farther north than the same curb line west of 19th Avenue. This in effect made Van Buren 55 feet wide at the east boundary line of 19th Avenue, relatively the same width it had west of 19th Avenue. From the southeast corner of the intersection Van Buren Street (going east) began to narrow, the loss in width coming off the south side, on a diagonal line. The loss in width was at the rate of 3 feet in 10, until at a point 40 feet east of the east curb line of 19th Avenue the street had narrowed to a width of 43 feet. For all practical purposes Van Buren Street west of 19th Avenue was a 4-lane highway, and a 3-lane highway east of 19th Avenue.

On the south side of Van Buren Street from 19th Avenue going east there was a parkway approximately 20 feet wide in which was included a sidewalk. The area (14 feet) between the curb and sidewalk was either dirt or covered with grass. In this parkway area the telephone company had installed a telephone pole, at the bottom of which were three or four guard posts (each 4 inches x 4 inches) painted white and on each of which were glass reflectors. Attached to the telephone pole was a guy wire.

From the evidence it appears that the automobile in which the deceased was riding was being driven east on Van Buren Street in the south lane thereof; that it crossed the railroad track at a speed of 65 to 70 miles per hour, continued to 19th Avenue, then through the intersection to the southeast corner of the intersection where it leaped the curb, smashed the guard posts and on into the telephone pole which by the impact was broken off at or near the ground. From the pole it continued east 80 to 100 feet in the parkway and on the sidewalk, when the left front wheels dropped off the curb. At this point the car "fell over and sort of spun half around" and then "went angling across the street" to the north side where it came to rest on its side, a distance of 250 feet from the intersection. The car burst into flames, burning to death the two occupants, one of

which was plaintiff's decedent. This automobile entered upon Van Buren Street at 23rd Avenue. At 22nd Avenue it had gained a speed of 55 miles per hour, where it passed a bus, then weaved back and forth gaining speed all the time until it passed over the tracks at a "terrific speed" or at a speed of "65 to 70 miles per hour".

Plaintiff claims that the deceased, in travelling east on Van Buren Street in the south lane thereof, had no warning of the fact that the same continuous south lane east of 19th Avenue would not be open to travel and that the comparable area would be used as a parkway containing a telephone pole. He contends that the reduction in width of the highway from a 4-lane to a 3-lane highway created a latent condition of danger, which danger was magnified by the fact that these physical conditions were not discernible until his decedent had crossed over the elevated railroad track with no possibility of retrieving herself and of which conditions there had been no notice. Plaintiff's witness testified that automobile lights at night were deflected upward in the air as one approached the elevated track from the west, and were of no benefit in illuminating the physical conditions east of the tracks.

At the conclusion of appellee's case and at the conclusion of all the evidence defendant moved for a directed verdict which was denied. Judgment was entered on the verdict and thereafter motion for a new trial was denied. From the order denying the motion for a new trial and the judgment defendant perfects this appeal.

The negligence alleged was:

(1) "Negligently and carelessly maintaining and permitting to exist a high embankment over which the track of the Santa Fe travelled";

(2) Constructing Van Buren Street in such a manner as to reduce its travel width from a 4-lane highway to a 3-lane highway;

(3) Failing to post signs and warnings west of the tracks of the existence of the embankment and the narrowing of the roadway;

(4) Permitting the telephone pole to exist in the parkway east of 19th Avenue.

■ Plaintiff's proof of the nonexistence of warning signs of the presence of the railroad track, and that the highway narrowed from four lanes to three lanes east of the intersection, was legally insufficient. One of plaintiff's witnesses who was acquainted with the highway testified that he did not "believe there were any warnings at all". Another witness, when asked if it wasn't true that there were warning signs indicating that the street narrowed, testified "not to my knowledge were there warning signs". Plaintiff's additional proof in this respect was to the

effect that in 1941 (five years before the accident) there existed signs in place according to a city map, which, according to the map, as interpreted by the city engineer, indicated that the signs were to be removed in the course of a widening program then to be undertaken and in fact carried out in 1941. Proof that no signs were in place in 1941 is no proof that there were no signs in place in 1946 as alleged.

■ It is basic under our law that to constitute actionable negligence the defendant must owe a duty to the plaintiff, the breach of which results proximately in plaintiff's injury. Scarborough v. Central Arizona Light & Power Co., 58 Ariz. 51, '117 P.2d 487, 138 A.L.R. 866; Salt River Valley Water Users' Ass'n v. Delaney, 44 Ariz. 544, 39 P.2d 625; Salt River Valley Water Users' Ass'n v. Compton, 40 Ariz. 282, 11 P.2d 839. In West v. Cruz, 75 Ariz. 13, 251 P.2d 311, 315, it was held that the actor owes no duty outside the scope of anticipated risk of harm. In this case, West, we quoted approvingly from the case of Palsgraf v. Long Island R. Co., 1928, 248 N.Y. 339, 162 N.E. 99, 59 A.L.R. 1253, as follows:

"* * * 'Negligence is not actionable unless it involves the invasion of legally protected interest or the violation of a right.' * * *"

For a different statement of the rule we also quoted from the case of West Virginia Cent. & P. Ry. Co. v. State, 96 Md. 652, 54 A. 669, 671, 61 L.R.A. 574, this wording of the rule:

"* * * In every instance, before negligence can be predicated of a given act, back of the act must be sought and found a duty to the individual complaining, the observance of which duty would have averted or avoided the injury. * * *"

■ Under all the circumstances prevailing, what duty did the City of Phoenix owe to the deceased? In this jurisdiction the standard of care imposed upon a municipality in the construction and maintenance of its streets and roads, is that of an ordinarily prudent person. City of Phoenix v. Clem, 28 Ariz. 315, 327, 237 P. 168; City of Phoenix v. Mayfield, 41 Ariz. 537, 548, 20 P.2d 296, 299.

■ This question now presents itself: Must the city, under the duty attributable to an ordinarily prudent person, construct and maintain its streets for unlawful use? In the Mayfield case, supra, it is pointed out that the city's duty extends only to those "exercising ordinary care and caution". Persons making unlawful use of the streets are not in this category.

■ Under all the facts here under consideration it is compellingly demonstrated that plaintiff's intestate was not making lawful use of Van Buren Street. The car in which she was riding was speeding at an unreasonable and unlawful rate

of speed. The maximum speed limit then in effect was 25 miles per hour "at any railway grade crossing where the view is not obstructed, * * *." Subsection (c) of Section 66–101, A.C.A.1939. This speed had begun at 22nd Avenue and was progressively increased as it passed 21st and 20th Avenues, over the railroad tracks and into 19th Avenue. There is nothing extraordinary or unusual in the fact that a highway is reduced from a 4-lane to a 3-lane highway. The Court takes judicial knowledge of the fact that the city has had extraordinary growth; that many additions and subdivisions have been added to the city, each laid out according to the particular ideas of the subdivider. The improved streets of this city and other cities of the state have been improved without uniformity as to width or direction, resulting in wide streets, narrow streets, jogs, offsets and dead ends. The railroad track was readily visible to any person in the exercise of ordinary care. The same observation applies to the parkway with its sidewalk and telephone pole, which was approximately 100 feet from the tracks. The gradual entrance into the 3-lane highway was apparent to any ordinarily prudent driver in the exercise of due care. As we see it there was nothing particularly unusual in any of the conditions there existing, unless it was the railroad track and the manner in which it was constructed. It constituted no danger to any traveller in the exercise of ordinary care and making lawful use of the highway. The city was under no legal obligation to construct a 4-lane highway throughout the length of Van Buren Street, nor was it under any legal obligation to remove the elevation or grade in Van Buren Street on which the tracks rested if the elevation with its relation to the intersection constituted no hazard to travellers making reasonable and lawful use of the street. Nothing about this intersection suggests that it was not wholly adequate and safe for lawful travel.

Under all the circumstances here prevailing we conclude that the city fulfilled its duty to the travelling public and particularly to plaintiff's intestate. The city, having acquitted itself of its duty, cannot be held liable. Negligence on its part was not shown. The fact that the negligence of the driver is not imputable to plaintiff's decedent cannot affect the result. Rodkey v. City of Escondido, 1937, 8 Cal.2d 685, 67 P.2d 1053. The trial court should have granted defendant's motion for a directed verdict.

The judgment is reversed with directions to dismiss plaintiff's complaint.

PHELPS, C. J., and STANFORD, UDALL and WINDES, JJ., concur.