427 P.2d 519

James BRAND and North American Van Lines, Inc., Appellants,

v.

J. H. ROSE TRUCKING COMPANY and Marion M. Hawkins, Appellees.*

No. 7405.

Supreme Court of Arizona,
In Banc.
May 11, 1967.

* Opinion of the Court of Appeals, Div. One 4 Ariz.App. 125, 418 P.2d 120 Vacated.

H. Rose Trucking Company and Marion M. Hawkins for damages resulting from a motor vehicle collision. The superior court directed a verdict for the Rose Trucking Company and Marion Hawkins, which was affirmed by the Court of Appeals, 4 Ariz.App. 125, 418 P.2d 120. Opinion of the Court of Appeals vacated and the judgment of the superior court reversed.

Plaintiffs, hereinafter called appellants, set forth one assignment of error. They urge that the trial court erred in directing a verdict for the appellees and in denying their motions for a new trial. It is their position that negligence per se was established at trial and the question of proximate cause, when viewed in the light of the facts most favorable to them, should have been left to the jury for resolution.

On October 18, 1958, a collision occurred between appellant North American Van Lines' truck, then being driven in a westerly direction by appellant James Brand on the north side of the road, and a 1949 Plymouth automobile, being driven in an easterly direction by either Francis or Sally Williams, husband and wife, neither of whom survived the accident. The accident occurred on a two-lane highway, U.S. 80, about seventeen miles west of Benson, Arizona, at 7:15 a. m., approximately one hour after sunrise, between the Cienega Wash Bridge and a railroad overpass located east of the bridge.

At the time of the accident, the appellee's truck and trailer were parked in the south lane of traffic headed east about three feet from the edge of the pavement. The driver of the Rose truck, appellee Marion Hawkins, had stopped the truck because he was unsure whether the height clearance at the railroad overpass was sufficient to permit his truck to pass beneath.

Approximately fifteen feet east of the southeast end of the Cienega Wash Bridge was a traffic warning sign which read, "Clearance 13 feet 11"." The actual height of Hawkins' load was 14 feet 9½ inches. His over-height permit directed that underpasses be avoided. Appellee Hawkins

Shimmel, Hill, Kleindienst & Bishop, Phoenix, for appellants.

Chandler, Tullar, Udall & Richmond, Tucson, for appellees.

STRUCKMEYER, Justice.

This is an action by James Brand and North American Van Lines against J.

walked to the underpass some three hundred feet away to determine whether he could drive under it. *No flags or warning signals were placed to indicate that the truck was stopped.*

Appellant Brand was driving a Mack truck-tractor, hauling a 35-foot Dorsey trailer owned by appellant North American Van Lines. As Brand, traveling west, approached the point where the accident occurred, he observed the Rose Company truck, headed east, parked in the opposite lane of traffic and a man (Marion Hawkins) walking on the side of the road. Brand testified he did not realize the Rose truck was stopped until he was almost abreast of it. At about the time Brand passed the Rose truck, the Williams vehicle, traveling east at about 55 miles per hour, turned into the westbound lane of traffic, apparently to pass a slower moving vehicle in front of it and between it and the truck. The Williams car then pulled back behind the car it was attempting to pass, applying its brakes. It thereafter swerved, left the eastbound lane crossing the center dividing line and entering the westbound lane directly into the path of the truck driven by Brand.

Brand testified:

"Q All right. So you would estimate, then, that the Rose truck at the time of the accident was about sixty feet past the point of the impact, is that correct?

"A Yes. It seems like it."

The Williams car, after impact, made a 270° turn to the left and rebounded back into the eastbound lane, striking a car driven by one Thomas Traynor which had been following the Williams vehicle.

Traynor was called as a defendant's witness. He testified that:

"I was driving about 55 miles an hour,"

and in response to the question, "Tell the jury what you saw," answered:

"In front of me, there was a '49 Plymouth and in front of it was one and possibly more cars and then there was a truck upon the hill, which I thought was moving slowly. * * * The Plymouth which I was following started to pull out to pass. * * * The car in front of the Plymouth was moving slower. * * * The Plymouth pulled back in and hit his brakes—I could see his brake lights— to keep from hitting the car in front of him, and then the car [Plymouth] swerved into the other lane. * * * I hit my brakes then. * * * Because I seen that he couldn't make it if he started to go around the car. * * * The car just seemed to—The '49 Plymouth seemed to swing into the other lane in front of the truck. * * * It seemed to be a sudden movement. * * * After the Plymouth was hit by the truck, it was knocked backward into my car."

When a motion for a directed verdict is made by a defendant, the trial court must consider all the competent and relevant evidence introduced tending to sustain the plaintiff's claim, whether offered by plaintiff or defendant, and all reasonable inferences drawn therefrom, in the strongest light against the defendant. If thus considered the evidence and inferences are sufficient to support a verdict, the motion is properly overruled. Nieman v. Jacobs, 87 Ariz. 44, 347 P.2d 702; Jeune v. Del E. Webb Construction Co., 76 Ariz. 418, 265 P.2d 1076; Ettlinger v. Collins, 25 Ariz. 115, 213 P. 1002; Arizona Binghampton Copper Co. v. Dickson, 22 Ariz. 163, 195 P. 538, 44 A.L.R. 881.

A.R.S. § 40–605, subsec. 2 provides that the corporation commission may regulate the facilities, service and safety of operations of common motor carriers. Pursuant to this statute, in April, 1958, the Arizona Corporation Commission adopted the Interstate Commerce Commission Motor Carrier Safety Regulations. These safety regulations provide that during the time when lighted lamps are not required, the driver of any motor carrier stopped or parked upon the traveled portion of any highway or shoulder thereof, except when within a business or residence district of a mu-

nicipality, must place red flags 100 feet in back of his truck and 100 feet in front of his truck. Title 49, Code of Federal Regulations, Part 192.26, 1952 Revision, p. 279. This regulation was in effect on the date of the accident and has the force of law. Cf. Apache Railway Co. v. Shumway, 62 Ariz. 359, 158 P.2d 142, 159 A.L.R. 857.

■ The regulation requiring the placing of warning signs was designed not merely to protect the stopped truck and prevent motorists from colliding with it, but to warn of the dangers inherent in the situation. The presence of red flags gives approaching motorists the opportunity to reduce speed and proceed with greater caution.

> "A moving vehicle and a stationary one call for different actions toward them by a prudent man, and tardy knowledge of a situation may create an emergency." Geis v. Cons. Freightways, 40 Wash. 2d 488, 490, 244 P.2d 248, 249.

And see Bunch v. Hanson, 251 Iowa 1097, 104 N.W.2d 581.

■ From the failure to heed a statute or regulation, the law conclusively infers a want of reasonable care. And negligence per se results from the violation of specific requirement of law or ordinance. Rogers v. Mountain States Tel. & Tel., 100 Ariz. 154, 412 P.2d 272. To establish negligence per se, there need only be shown that a party committed the specific act prohibited, or omitted to do the specific act required by the statute or ordinance. See Deering v. Carter, 92 Ariz. 329, 376 P.2d 857. Defendant Hawkins, by his own admission, neglected to put out flags as required by law while he was stopped on the highway. Negligence per se on the part of the defendants is patent.

■ In Salt River Valley Water Users' Association v. Compton, 39 Ariz. 491, 8 P.2d 249, we said:

> "Where a valid statute, enacted for the public safety, or governmental regulation

made in pursuance thereof, provide that a certain thing must or must not be done, if a failure to comply with the regulations is the proximate cause of injury to another, such failure is actionable negligence *per se*." 39 Ariz. 491 at p. 496, 8 P.2d 2 at p. 251.

The proximate cause of an injury is that which, in a natural and continuous sequence, unbroken by an efficient intervening cause, produces an injury, and without which the injury would not have occurred. Alires v. Southern Pacific Co., 93 Ariz. 96, 378 P.2d 913; Barker v. General Petroleum Corp., 72 Ariz. 187, 232 P.2d 390.

■ Motorists approaching the Rose truck from either direction were not clearly apprised that it was stopped on the highway. The testimony of the two eyewitnesses, James Brand and Thomas Traynor, reveals that both of these men believed the Rose truck was moving. In Blessing v. Weldon, 226 Iowa 1178, 286 N.W. 436, the court, in a case substantially similar to the one at bar, said that where a third party's act, even if it is negligent, intervenes between the original negligence of the defendant and the injury, the original party may nonetheless be the proximate cause of the accident if ordinary prudent men could or should have anticipated that such similar or intervening act would occur.

■ Moreover, there may be more than one proximate cause of an accident if each was an efficient cause without which the resulting injuries would not have occurred. City of Phoenix v. Camfield, 97 Ariz. 316, 400 P.2d 115; Beltran v. Stroud, 63 Ariz. 249, 254, 160 P.2d 765, 767; Koff v. Johnson, 1 Ariz.App. 196, 401 P.2d 150.

■ There was here negligence as a matter of law by the failure to put out warning flags while the Rose Company truck was stopped on the highway. A jury could find that a person in the position of the Williamses would believe the

truck was moving and therefore a condition embodying an unreasonable risk of harm to others was created out of which the appellants' injuries resulted. That the Williams vehicle seemingly veered into the oncoming lane of traffic does not necessarily suggest an inference of mechanical failure, or failures, in connection with the Williams car, physical seizure of its driver or other causes not attributable to the defendants' conduct as against the possible inference that the driver was desperately endeavoring to bring to a halt a vehicle traveling at approximately 80 feet per second. We cannot say that the course of the Williams vehicle could not have reasonably been anticipated in light of the possible consequences of the failure to warn others lawfully using the highway that the traveled lane was substantially blocked.

In establishing the proximate cause of an accident, speculation cannot be substituted for probative facts after making due allowance for all reasonably possible inferences favoring the party whose case is attacked; and, if a possible reasonable inference is present, the issue must be presented to the jury for its determination. Apache Railway Co. v. Shumway, supra. When there is any evidence of negligent conduct which reasonable men might infer was one of the proximate causes of the accident, the cause must be submitted to the jury for decision. Figueroa v. Majors, 85 Ariz. 345, 388 P.2d 803. See also, Fluor Corp. v. Sykes, 3 Ariz.App. 211, 413 P.2d 270.

In Mitchell v. Rogers, 37 Wash.2d 630, 225 P.2d 1074, the Washington Supreme Court held that where the operator of a stalled truck parked on a portion of the highway failed to place warning flags near his disabled vehicle and a head-on collision resulted, the owners and operators of the stalled truck were liable for damages. The Court there held that the statute requiring warning signs was mandatory, and that where fair-minded men may differ as to the facts, or as to the conclusions drawn

therefrom, the question of proximate cause was for the jury. That Court said:

"* * * the jury could have concluded that, had warning flags been properly placed, the actions of any of the drivers involved would have been altered sufficiently to have prevented the accident." 225 P.2d 1074, 1081.

In Dixie Drive It Yourself System New Orleans Co. v. American Beverage Co., 242 La. 471, 137 So.2d 298, where the driver of a stopped truck failed to display a red signal flag, the Court said:

"A stationary vehicle and a moving one require different driving actions by an overtaking motorist. A momentary delay in the recognition that a vehicle is stationary may create a dangerous traffic situation. The signal is designed to arrest the attention of all approaching drivers—even an inattentive one.

"The display of the red signal flag one hundred feet behind the RC Cola truck would have served as an advance warning to both the driver of the Dixie truck and Dr. Wheeler that a stationary vehicle was ahead. * * * We can reasonably infer that the collision would not have occurred if the statutory precautions to protect approaching traffic had been taken. The mere possibility that the accident would have occurred despite the required precautions does not break the chain of causation." 242 La. at 486, 487, 137 So.2d at 304.

In Reed v. Ogden & Moffett, 252 Mich. 362, 233 N.W. 345, where a truck occupied a portion of the paved right-of-way at night without showing any lights, and the plaintiff, approaching from behind, applied his brakes resulting in his car skidding into the path of a car coming from the opposite direction, the Michigan Court said:

"It is urged that defendant's negligence was not the proximate cause of plaintiff's injuries, as the car in which he rode collided with James' car, not with defendant's truck. That James was negli-

gent we need not discuss. Assuming that he was, and that the accident would not have happened but for his negligence, it is clear that defendant's negligence was also a proximate cause; the two were cooperating and concurrent." 252 Mich. at 366, 233 N.W. at 346.

 What constitutes the proximate cause of an injury in a particular case is a question of fact to be determined from all the surrounding circumstances, and can only be a question of law when the facts are not only undisputed but are also such that there can be no difference in the judgment of reasonable men as to the inferences to be drawn from them.

"'* * * It is further fundamental that a verdict will not be directed where the evidence on material facts is conflicting, or where on disputed facts reasonable and fair-minded men may differ as to inferences and conclusions to be drawn, or where different conclusions might reasonably be reached by different minds, and thus the question of negligence and *proximate cause* is one of fact to be submitted to the jury and not a question of law for the court; * * *'" Stearman v. Miranda, 97 Ariz. 55, 59, 396 P.2d 622, 625, quoting Figueroa v. Majors, 85 Ariz. 345, 346–347, 338 P.2d 803, 804. (Emphasis supplied.)

From the evidence presented, when considered in a light most strongly in favor of the appellants, reasonable men could differ as to the conclusions and inferences to be drawn therefrom. The question of proximate cause should have been presented to the jury and the action of the trial court in granting judgment for the defendants and taking the case from the jury was erroneous.

Reversed and remanded.

BERNSTEIN, C. J., McFARLAND, V. C. J., and LOCKWOOD, J., concur.

NOTE: Justice JESSE A. UDALL, having disqualified himself, did not participate in this decision.