488 P.2d 991

**Constance Regina COLLINS, a minor, by and through her Guardian ad Litem, Everett Millard Collins, Appellant,**

**v.**

**COUNTY OF MARICOPA, Appellee.**

**No. I CA–CIV 1348.**

Court of Appeals of Arizona,
Division 1,
Department A.

Sept. 27, 1971.

Rehearing Denied Oct. 20, 1971.
Review Denied Nov. 23, 1971.

Gerald F. Sullivan, and Herbert Mallamo, Phoenix, for appellant.

Jennings, Strouss & Salmon by William R. Jones, Jr., and M. Byron Lewis, Phoenix, for appellee.

DONOFRIO, Judge.

This is an action for personal injuries arising out of a one-car accident which occurred when a car driven by Robert Janis hit a hole in a dirt road and rolled over. The appellant, Constance Collins, (herein referred to as plaintiff), a passenger in this automobile, was thrown against the roof of the car as a result of the accident, injuring her neck, causing paralysis of her body and rendering her a quadraplegic with permanent disability. Although Janis, a minor, along with his father as guardian ad litem and Maricopa County were originally joined as defendants, the action was dismissed as to Janis and proceeded to trial by jury against only Maricopa County (herein referred to as the county or as defendant) on the theory of failure or neglect to properly maintain the road. The jury returned a verdict for defendant, and plaintiff now appeals therefrom, raising a number of contentions concerning the propriety of certain jury instructions and certain rulings made during the trial.

The pertinent facts are as follows. On the morning of October 5, 1968, Robert Janis drove three friends, including plaintiff, from Phoenix to Saguaro Lake. Although there was conflicting testimony, these four persons testified that they arrived at the lake around noon, met a friend with a boat, and spent the afternoon water-skiing. They left the lake around 5:00 p. m. and traveled north to the Beeline Highway, then traveled west on the Beeline Highway to the McDowell Indian Reservation Road. They proceeded north on this road for approximately ten miles where the road continues on as the Box Bar Ranch Road. Both the Box Bar Ranch Road and the Indian Reservation Road are dirt roads, however the Box Bar Ranch Road is maintained in better condition. The vehicle proceeded along the Box Bar Ranch Road for approximately one mile, going over frequent dips following the contour of the land, when it traveled over and down a small rise whereupon the right front wheel struck a hole in the road which was approximately a foot deep and a foot and a half in width and length, causing the car to bounce violently, throwing it into a broadside skid for a distance of 40 feet, then striking the berm at the side of the road which caused the vehicle to roll over once and come to rest upright on its wheels approximately 200 feet from where the automobile struck the hole. The uncontroverted testimony was that when the car struck the hole the defendant hit her head on the roof of the car, causing injuries to her spinal column and rendering her a quadraplegic with no sensation below the sixth cervical vertebra.

Janis testified that he was driving approximately 35 to 40 miles per hour at the time of the accident, but stated this was based on an approximation because he had not looked at his speedometer. On the other hand, two accident reconstruction experts testifying for the defendant separately conducted investigations and concluded that at the time of the accident Janis's automobile was traveling 50 to 60 miles per hour.

The Box Bar Ranch Road was not a declared or dedicated county road, had no road signs, and the county, which had as-

sumed maintenance of this road, was limited by statute in the materials used in the maintenance of this road. The procedure used by the county in maintaining the road was to smooth out the road which consisted of mostly decomposed granite, drag loose material into any holes, and sometimes to back the grader over the holes to compact the fill. This procedure was performed approximately 12 times each year, usually subsequent to heavy rains. After these holes were filled, vehicular traffic would sometimes knock out the decomposed granite which had been filled into the holes. Testimony was to the effect that it probably rained in this area some time during the week prior to the accident, and that this road had been graded on either October 3 or 4, 1968, one or two days prior to the accident. Pictures were introduced into evidence which depicted the hole in the road.

The case was brought to trial by plaintiff to recover actual and special damages sustained as a direct and proximate result of the county's failure and neglect to properly maintain the road or to warn traffic of the unsafe condition. The defendant alleged as its defense first, that it was not negligent, and second, even if it were found to be negligent that Janis's negligent driving of the automobile superseded any negligence of the county. The jury returned a verdict for the defendant and it is from that judgment that plaintiff now appeals.

Plaintiff alleges error in several jury instructions. The first of which he complains is that the court erred in instructing the jury that defendant's duty did not extend to the plaintiff if the automobile in which she was riding was being driven in an unlawful manner.[1]

It appears the court based the giving of this instruction upon the case of *City of Phoenix v. Lopez,* 77 Ariz. 146, 268 P.2d 323 (1954). Our Supreme Court stated in that case, in dicta:

"* * * Must the city, under the duty attributable to an ordinary prudent person, construct and maintain its streets for unlawful use? In the Mayfield case, supra, it is pointed out that the city's duty extends only to those 'exercising ordinary care and caution.' Persons making unlawful use of the streets are not in this category." 77 Ariz. at 150, 268 P.2d at 325.

■ It appears from reading only the above quotation that the Lopez case stands for the proposition that the city is automatically exonerated from tort liability to persons making unlawful use of its streets, but in our opinion that is not the law in this state, nor the proposition for which Lopez stands. In the Lopez case, the plaintiff was asserting that the city had a duty to place a sign to warn the plaintiff that the street upon which he was riding narrowed from a four-lane to a three-lane highway. The plaintiff in that case was driving 65–75 miles per hour in a 25-mile-per-hour speed zone. The Supreme Court in Lopez held that if the street was maintained and constructed in such a manner that the road was safe for travel at lawful speeds, the city was not liable if the road was unsafe for travel at an unlawful speed and an accident occurred. In that case, under those facts, the proximate cause of the accident, if the road was found safe for travel at lawful speeds, would be the unlawful speed of the car and not the construction of the road.

That is not the case before this Court. In this case, the court's instruction did not state that if the road was found safe for

---

1. The instruction given by the court was as follows: "To constitute actionable negligence, the defendant must owe a duty to the plaintiff, the breach of which results proximately in plaintiff's injury. When a county undertakes to maintain a road for the use of the public it has a duty to exercise ordinary care to maintain it in a reasonably safe condition for travel. *The duty does not extend to persons in an automobile which is being operated in an unlawful manner.*" (emphasis ours)

travel at lawful speeds, and if the driver of the automobile was found to be driving at an unlawful rate of speed, the county's duty did not extend to the plaintiff. Instead, the court's instruction, as given, precluded the plaintiff from any recovery even if the jury determined the road was unsafe for travel at certain lawful speeds, i. e., even though the accident would have occurred had the car been traveling at a lawful rate of speed.

To illustrate the point more clearly, it is conceivable under the facts of this case that the jury could well find the county was negligent in leaving such a hole in an otherwise graded road, which hole they would also find to be a hazard to one driving on the road lawfully. The jury should have been instructed that if such be found, the county would be liable to plaintiff provided this negligence was a proximate cause of the accident and that there was no intervening and superseding cause which proximately caused the accident.

What we wish to say is that the instruction was in direct conflict with the principles established in Arizona concerning intervening and superseding cause which would relieve an otherwise negligent party of liability. Under the instruction as given, the driver's unlawful use of the road, if found to exist, could be found to be an intervening cause relieving the defendant of liability even if the road was found to be maintained in a manner unsafe for travel at lawful speeds.

██ Plaintiff contends that the court erred in denying plaintiff's requested instruction on concurrent cause. On this we disagree. Arizona has accepted the following definition of concurrent cause:

" * * * Where defendants' negligent course of conduct (as distinguished from the risk of harm created) actively continues up to the time the injury is sustained, then any outside force which is also a substantial factor in bringing about the injury is a concurrent cause of the injury and never an 'intervening' force. Worthington v. Funk, 7 Ariz.

App. 595, 442 P.2d 153 (1968); Restatement (Second) of Torts Sec. 439 (1965)." Zelman v. Stauder, 11 Ariz. App. 547, 550, 466 P.2d 766, 769 (1970).

The defendant's negligent course of conduct, if it existed, was in maintaining the road. If that occurred, it happened some time during the week prior to the accident when the county graded the road. Thus, defendant's negligent course of conduct, if it existed, terminated prior to the accident, and all that continued up until the accident was the risk of harm. Thus, the court was correct in denying plaintiff's requested instruction as to concurrent cause, and instead giving the instruction as to intervening cause. Intervening cause in Arizona is as follows:

" * * * An intervening force is defined as being one that actively operates in producing harm after the original actor's negligent act or omission has been committed. 2, Restatement, Torts, § 441. This situation usually arises when the original negligent act has ceased its active operation and has produced a passive condition. * * * " Herzberg v. White, 49 Ariz. 313, 321, 66 P.2d 253, 257 (1937).

In the instant case, the hole existing in the road could cause no harm without the addition of some active and intervening force. The active and intervening force was the driving of the automobile over the road. As we have explained, this intervening force, however, unless also found to be superseding, did not relieve the county of liability.

██ The test to determine whether an intervening cause is or is not a superseding cause is:

" * * * whether the intervening cause is an extraordinary one, or one which might normally be expected by a reasonable person in view of the situation existing at the time of its intervention. Id., [2 Restatement, Torts] § 442(b)." Herzberg v. White, 49 Ariz. 313, 321, 66 P.2d 253, 257.

We believe it helpful to a better understanding of this case to review the instructions given as to intervening and superseding cause. The court first defined intervening cause as:

> "An independent cause which steps between the original wrongful act or omission of the defendant, if any, and the injury to the plaintiff alters the natural normal sequence of events and produces a result which would not have otherwise occurred."

We find no error with this instruction. The court then went on to state:

> "If you find the County in this action to have been negligent, it is not liable if the negligent act of another intervened as an approximate (sic) [2] cause of the accident *and if such intervening act could not have been foreseen by the defendant Maricopa County by the exercise of ordinary care.*" (emphasis ours)

We deduce that the emphasized portion of the above instruction was intended by the court to supplant the definition of superseding cause. While the court's instruction could have been more complete, and also have referred to superseding cause by name, the instruction conforms to the definition supplied in City of Phoenix v. Schroeder, 1 Ariz.App. 510, 516, 405 P.2d 301, 307 (1965), which states:

> "For an intervening cause to be a superseding cause it must be a cause which could not have been reasonably foreseen or anticipated by the defendant."

That instruction, however, when read with the instruction which followed,

> "If you find that the defendant Maricopa County was negligent and that its negligence approximately (sic) caused the accident, it is not a defense that

some third person's negligence may also have contributed to the injury unless such negligence was an intervening cause as defined elsewhere in these instructions."

imports, at least in our opinion, that the driving of the automobile, if found to be an intervening act, and as the instructions were given the driving of the automobile would be found to be an intervening act, would relieve the defendant county of liability. That is not the law in this state. Although the terms "intervening" and "superseding" are sometimes used interchangeably, an intervening cause alone does not relieve the defendant of liability; the cause must also be superseding, as that term is legally defined to relieve the defendant of liability. Herzberg, supra.

After reviewing the other instructions as to intervening and superseding cause, we have found that the court failed to cure this error or the confusion created in this difficult-to-understand area of the law. The instructions incorrectly purport that there is only one cause, that being an intervening cause, which, if found, relieves the defendant of liability.

Accordingly, after reviewing all the jury instructions together, we think the errors in the instructions quoted above are sufficient to require a reversal. We deem it unnecessary at this time to discuss plaintiff's other questions presented as they might not arise in the same manner upon retrial. Nevertheless, we deem it important to comment upon one error discovered in our study of the transcript. In describing A.R.S. § 28–701, subsec. B, the transcript reads:

> "The speed of any vehicle not in excess of the limits specified in this section or

---

2. The correct word is "proximate" rather than "approximate". The two words connote entirely different meanings, approximate meaning merely more or less, while proximate means closest in causal connection. However, since the written submitted instructions, as distinguished from the reporter's transcript, are correct, and since no point is made of this by counsel, we can assume the error to be one of transcription. If not an error of transcription, the use of the word "approximate" in this instruction would obviously create some confusion in this area of the law.

established as authorized by this article shall be *unlawful*. \* \* \*" (emphasis ours)

The correct word is "lawful", not "unlawful". Since neither party complains of error as to this instruction, we have not taken this into consideration as we are reversing this case on other grounds, however if this error was not one made in transcription, it was a grievous error which may have been sufficient to require a retrial.

Reversed.

STEVENS, P. J., and CASE, J., concur.