528 P.2d 876

**The STATE of Arizona and Ashton Construction Co., Inc., Appellants,**

**v.**

**Lois F. CRESS, as surviving spouse of Carl Chester Cress, Jr., and as Administratrix of the Estate of Carl Chester Cress, Jr., Decedent, Appellee.**

**No. 1 CA–CIV 1920.**

Court of Appeals of Arizona, Division 1, Department A.

Nov. 26, 1974.

Rehearing Denied Jan. 13, 1975.

Review Denied Feb. 11, 1975.

O'Connor, Cavanagh, Anderson, Westover, Killingworth & Beshears, P. C. by Richard McC. Shannon, John H. Westover, *Phoenix*, for appellants.

Gibson, Gibson & Schoeph by Franklin K. Gibson, Phoenix, and Thomas M. Eckhardt and Robert C. Youmans by Thomas M. Eckhardt, San Bernardino, Cal., and Thomas T. Anderson, Indio, Cal., for appellee.

## OPINION

OGG, Judge.

This court is asked by defendants-appellants Ashton Construction Company and the State of Arizona to review a wrongful

death action which terminated in a verdict for plaintiffs-appellees Lois F. Cress and Kim Cress in the sum of $216,000. Appellants raise three contentions of error: Failure of the trial court to grant defendants' motion for directed verdict, improper instruction to the jury regarding its function in determining issues of contributory negligence and the prohibition against the admission of evidence of remarriage of a widow in a wrongful death action. We have considered each of the issues raised by appellants and after deliberation hold to affirm the judgment.

Ashton Construction Company was retained by the State of Arizona to build a realignment of State Highway 95. Part of the construction company's responsibility was to install metal plates in the center of the highway. These plates protected survey markers which indicated section line designations for the land. The plates were laid in cement to insure permanency. Large 55-gallon drums were placed in front of the recently cemented plates to protect them until they dried. Ashton Construction Company placed three or four large stones, each approximately eighteen pounds in weight, on top of the drums to prevent them from blowing over and becoming a hazard to the motoring public.

On March 19, 1968, decedent Carl C. Cress, Jr. was returning from a business trip in Yuma to his home in Blythe. He was proceeding along the six mile realignment project at speeds ranging from 38.8 miles per hour to 68.6 miles per hour, depending on the expert witnesses' testimony. Mr. Cress evidently hit a drum with the boulders on top, causing a boulder to pass over the hood of the car, through the windshield, striking Mr. Cress on the head and ultimately causing his death. There

were no witnesses to the accident and consequently no certain evidence as to the circumstances precipitating the catastrophe.

Appellants Ashton and State of Arizona contend that the trial court was obliged to direct a verdict in their favor, maintaining that the trilogy of City of Phoenix v. Lopez, 77 Ariz. 146, 268 P.2d 323 (1954); City of Glendale v. Bradshaw, 16 Ariz. App. 348, 493 P.2d 515, modified 108 Ariz. 582, 503 P.2d 803 (1972); and Collins v. County of Maricopa, 15 Ariz.App. 354, 488 P.2d 991 (1971), supports their position. While we agree that the cited trilogy controls here, we disagree with the conclusions drawn by appellants Ashton and State of Arizona.

Lopez has often been used in attempts to limit liability in the field of road construction. The often quoted text of Lopez,[1] supra, which has served as the basis for the liability limiting argument was refined in Collins and resolved in Bradshaw. Collins interpreted Lopez in succinct fashion by stating:

"Lopez held that if the street was maintained and constructed in such a manner that the road was safe for travel at lawful speeds, the city was not liable if the road was unsafe for travel at an unlawful speed and an accident occurred." 15 Ariz.App. at 356, 488 P.2d at 993.

Collins clarified Lopez by holding that the determination to be made in the first instance was whether the roadway was in such a condition as to be safe for travel under lawful conditions.

Bradshaw explicitly recognized that the use of the roadway, whether lawful or not, had no place in determining what the *duty* of the governmental unit was in maintaining the roadway for the motoring public.[2]

1. In Lopez the court phrased the issue and answered in this manner:

"This question now presents itself: Must the city, under the duty attributable to an ordinarily prudent person, construct and maintain its streets for unlawful use? In the Mayfield case, supra, it is pointed out that the city's duty extends only to those 'exercising ordinary care and caution.' Persons making unlawful use of the streets are not in this category." 77 Ariz. at 150, 268 P.2d at 325.

2. The Court in Bradshaw stated that even if the allegations of plaintiff's unlawful use of the highway were correct that the court

Lopez, Collins and Bradshaw, when read as a group, leads this court to conclude that there is a duty to maintain a roadway in a manner that is safe for lawful use. The lawfulness of the conduct in the use of the road has no place in determining whether there is a duty or whether the roadway was safe for lawful use. Counsel for appellants artfully contend before this court that we should hold as a matter of law or that the trial court should have held that the roadway was safe for lawful use. As an alternative or in combination with that proposal, appellants subtly invite this court to hold as a matter of law that the decedent Cress was operating his vehicle in an unlawful manner at the time of the accident.

In support of appellants' contention, that as a matter of law the roadway was safe for lawful use, they cite Larsen v. Johnson, 21 Utah 2d 92, 440 P.2d 886 (1968). In that case, large boulders weighing approximately eighty-five pounds were placed on barricades on the side of the road. The plaintiff allegedly swerved into the wrong lane to avoid an auto which had swerved into his lane and plaintiff collided with the barricade, causing the boulder to fly over the hood, through the windshield, and causing injuries to the plaintiff. The court held that summary judgment for the defendant was proper under the circumstances of the case.

Aside from the question of whether the Larsen decision is distinguishable on its facts, this court cannot agree that the question of whether a barricade with boulders on top of it, which were in no way anchored to the barricade, is susceptible to a motion for directed verdict or summary judgment. We agree with the Larsen court's observation that a barrier used on the highway " . . . should not be so

constructed as to constitute a trap [n]or should it create any unnecessary hazard." However, we believe that the facts of this case are best left to the trier of fact.[3] Arizona has recognized this principle in Cohen v. Sahuaro Petroleum and Asphalt Co., 17 Ariz.App. 215, 496 P.2d 641 (1972), where it is stated that

"[a] road contractor must exercise reasonable care to avoid injury to the traveling public and his conduct is governed by the ordinary rules of negligence . . . The adequacy of the actions taken by a contractor to satisfy its duty toward the traveling public is generally a question for the trier of fact." 17 Ariz. App. at 217, 496 P.2d at 643.

We are of the opinion that Ashton Construction Company and the State of Arizona had a duty to maintain the roadway in a safe condition. The question of whether placing large stones on barrels on the centerline of a highway was a breach of that duty was properly left to the trier of fact. There was sufficient evidence before the jury to support the verdict. The defendants should have anticipated that such a barricade could create an additional hazard to the user of the highway.

The second contention of error pressed by appellants is directed at the court's instruction to the jury concerning contributory negligence. This disputed instruction reads:

"[t]he Constitution of the State of Arizona gives you the discretion to determine whether or not to apply the defense of contributory negligence. Thus you can award plaintiff damages even though you find Carl Cress [decedent] was contributorily negligent."

The thrust of appellants' argument is that the instruction induced the jury to believe that it had discretion in deciding the

---

was " . . . unable to agree with the proposition of law advanced or the basis thereof to the effect that a municipality owes no duty to those who use its streets in an unlawful manner." 16 Ariz.App. at 352, 493 P.2d at 519. The court then continued by approving of Collins' interpretation of Lopez.

3. It may be noted that Justice Henriod of the Utah Supreme Court dissented in Larsen, stating that "there was a genuine fact issue that transcended the summary judgment, triable by an arbiter thereof." 21 Utah 2d at 96, 440 P.2d at 888.

issue of decedent's negligence rather than the application of the defense of contributory negligence. Appellants Ashton and State of Arizona also contend that the jury is vested with a discretionary power only as related to the issue of proximate cause, not as to contributory negligence. Orlando v. Northcutt, 103 Ariz. 298, 441 P.2d 58 (1968).

We cannot agree with either of appellants' contentions. The instruction given by the trial court was approved of in Zadro v. Snyder, 11 Ariz.App. 363, 464 P.2d 809 (1970). Granted, the instruction under review did not inform the jury of what actions would constitute negligence on the part of decedent. However, the other parts of the charge to the jury did. All issues present in a case cannot be resolved by a single instruction. In view of the other instructions given, we are of the opinion that the jury was adequately instructed on what actions would constitute negligence on the part of the decedent. Rogers v. Mountain States Telephone and Telegraph Co., 100 Ariz. 154, 166, 412 P.2d 272, 280 (1966).

■ Appellants' second argument is more difficult to resolve. The difficulty arises, not because of the concept that is promulgated by Article 18, Section 5, of the Arizona Constitution, A.R.S., but due to the evolving case law which attempts to enunciate, in a clear fashion, how the section is best conveyed to the layman. Rather than surveying all the cases which have addressed Arizona's unique approach to contributory negligence, it seems more appropriate to restate several basic propositions. Article 18, Section 5, of the Arizona Constitution states

"[t]he defense of contributory negligence or of assumption of risk shall, in all cases whatsoever, be a question of fact and shall, at all times, be left to the jury."

It has been argued that since the passage leaves only "question[s] of fact" to the jury that the section does not mean that

the issue of law, whether to apply the defense of contributory negligence, is left within the jury's province. We do not agree with that interpretation, nor do we believe that the Arizona case law supports the contention. The courts of Arizona have interpreted the phrase "question of fact" to include both questions of law or fact. See, e.g., Rogers v. Mountain States Telephone and Telegraph Co., supra; Campbell v. English, 56 Ariz. 549, 554, 110 P.2d 219, 221 (1941). The phrase was used to assure that the question would be treated as one of fact, thereby falling within the realm of the jury's responsibility.

■ A second distinction which is often urged before the courts is that between contributory negligence amd proximate cause. Many courts which have faced the issues present in contributory negligence cases have used proximate cause language. See, Orlando v. Northcutt, supra; Brand v. J. H. Rose Trucking Co., 102 Ariz. 201, 427 P.2d 519 (1967); Zancanaro v. Hopper, 79 Ariz. 207, 286 P.2d 205 (1955). The impression with which a reader can be left is that the proximate cause issue is the only matter with which the jury is to deal. However, we do not believe that these cases intended to distinguish between proximate cause and contributory negligence, but rather to more clearly enunciate how the jury can define and consider whether to apply the "defense of contributory negligence."

Proximate cause and contributory negligence are not strangers to each other when used to clarify the jury's function regarding Article 18, Section 5, of the Arizona Constitution. In Brand v. J. H. Rose Trucking Co., supra, it is stated

"[t]he proximate cause of an injury is that which, in a natural and continuous sequence, unbroken by an efficient intervening cause, produces an injury, and without which the injury would not have occurred." 102 Ariz. at 205, 427 P.2d at 523.

Contributory negligence has been defined in Varela v. Reid, 23 Ariz. 414, 204 P. 1017 (1922) as:

"such an act or omission on the part of plaintiff, amounting to an ordinary want of care, as, concurring or co-operating with the negligent act of defendant, is the proximate cause or occasion of the injury complained of." 23 Ariz. at 418, 204 P. at 1019.

Thus a question to be considered by the jury is whether a plaintiff's contributory negligence is the proximate cause of the injury. Merely because the jury should consider proximate cause does not lead to the conclusion that it has no discretion regarding contributory negligence; rather, the opposite is true. The Constitution explicitly leaves discretion with the jury to consider whether to apply the defense of contributory negligence. In that determination the jury should consider proximate cause. To limit the jury's inquiry to the question of proximate cause would allow the tail to wag the dog. Case law has developed so as to guide juries in their consideration of contributory negligence; one aspect of that determination is proximate cause.

The compatibility of the notions of proximate cause and contributory negligence is supported by Zancanaro v. Hopper, 79 Ariz. 207, 286 P.2d 205 (1955), where it is stated that

"[t]he degree of Zancanaro's negligence, if any, doesn't have the effect of divesting it of the characteristics of contributory negligence and vesting it with the elements essential to establish sole negligence. It is only when it can be said that the defendant is not guilty of any negligence which was a proximate cause of the injury that it can be said that the plaintiff's negligence is the sole cause of his injury." 79 Ariz. at 212, 286 P.2d at 209.

This court is not unaware of the difficulty in understanding and relating to a jury its proper function. The effect of contributory negligence in our state is that of a bastardized comparative negligence statute. The comparison between our constitutional provision and comparative negligence has long been with us. Layton v. Rocha, 90 Ariz. 369, 373, 368 P.2d 444–446 (1962). (Jennings, J., dissenting.)

It should be noted that our provision was adopted from an identical passage in the Constitution of Oklahoma. See, Okl.Const. Art. 23, Section 6. Oklahoma, however, has since become a comparative negligence state. In so doing, they have not deleted Article 23, Section 6; rather, they have combined it with a comparative negligence statute adopted from another jurisdiction.[4] In commenting on the compatability of Article 23, § 6, with the comparative negligence statute, it has been noted that it:

"does not appear that the comparative negligence statute presents any conflict with the express wording of this [Art. 23, sec. 6] provision. The new law, although modifying the defense, does not abolish it . . . nor does it remove the issue from the province of the jury." Note: Torts: Oklahoma's Uncharted

4. In 1973 the Oklahoma Negligence Bill (Senate Bill 138) was signed into law. It is present in Title 23, §§ 11 and 12.
"Section 11. Contributory negligence shall not bar recovery of damages for any injury, property damage or death where the negligence of the person injured or killed is of lesser degree than the negligence of any person, firm, or corporation causing such damage.
In all actions hereafter accruing for negligence resulting in personal injuries or wrongful death or injury to property, contributory negligence shall not prevent a recovery where any negligence of the person so injured, damaged, or killed is of lesser degree than any negligence of the person, firm, or corporation causing such damage; provided that where such contributory negligence is shown on the part of the person injured, damaged or killed, the amount of the recovery shall be diminished in proportion to such contributory negligence.
Section 12. The defense of contributory negligence or of assumption of risk shall, in all cases whatsoever, be a question of fact, and shall at all times, be left to the jury, unless a jury is waived by the parties."

Land of Comparative Negligence, 27 Okla.L.Rev. 122, 124 (1974).

The difficulty that courts are faced with in properly instructing a jury will remain until Arizona recognizes Article 18, § 5, for what it is—a comparative negligence provision. Only then can the courts modify their approach to instruction, which would undoubtedly ·clarify the area for both the practicing bar and the jury.

■ Appellants Ashton Construction Company and State of Arizona contend that Arizona's rules prohibiting evidence of remarriage in a wrongful death action should be overturned. As a corollary to the argument it is urged that if a remarried "widow" is referred to by her former married name, counsel should be permitted to advise the jury of the "widow's" current surname. In the alternative, it is argued that it was error not to permit appellants an opportunity to argue the remarriage issue once the door was opened by appellee.

The essense of appellants' first two arguments is bifold: remarriage should be considered in assessing damages and reference to the remarried widow by the former married name is tantamount to perpetrating a fraud upon the jury.

This court has considered the rule which prohibits remarriage as a fact to be considered by the jury in an assessment of damages and abides by the precedent existent in this State. Hing v. Youtsey, 10 Ariz. App. 540, 460 P.2d 646 (1969); City of Phoenix v. Whiting, 10 Ariz.App. 189, 457 P.2d 729 (1969). Arguments for and against the admission of evidence of remarriage are forceful. On the one hand it has been argued that remarriage should be introduced because change in the conditions on which a suit is based is competent as against the rights of the person affected. Campbell v. Schmidt, 195 So.2d 87 (Sup.Ct. of Miss. 1967). Yet, to abide by such a holding invites jurors to make comparisons between the first and second marriage, between the first and second spouses' treatment of the children, and other speculative aspects of damages. Indeed, if the second marriage was more "advantageous" to the surviving beneficiary than the first and the jury reduced an award because of that determination, the defendant would be rewarded unjustly. On balance we believe that Hing v. Youtsey, supra, is correct in prohibiting evidence of remarriage as it relates to damages and abide by that decision.

■ Adherence to the rule prohibiting evidence of remarriage in relation to the issue of damages does not dispose of appellants' contention that reference to a widow by the surname of her prior marriage perpetrates a fraud upon the jury. Jurisdictions have directly addressed this question and have resolved it in different manners. Wisconsin and Mississippi, for example, have resolved the issue by holding that evidence of remarriage is admissible and relevant to the mitigation of damages. See, Campbell v. Schmidt, supra; Jensen v. Heritage Mutual Insurance Co., 23 Wis.2d 344, 127 N.W.2d 228 (1964). Obviously, since evidence of remarriage is admissible as to damages, the jury is aware of the plaintiff's present name and no fraud or legal fiction is imposed upon the jury. This approach we cannot adopt. Hing v. Youtsey, supra.

Illinois and New Jersey have approached the problems in a persuasive manner. Those courts have recognized two opposing objectives: prohibition of the juries' consideration of the remarriage in arriving at damages and informing the jury that a second marriage did exist, thereby obviating the need to refer to the plaintiff by a prior name. These jurisdictions have accomplished the compromise by allowing the judge, prior to *voir dire* examination of prospective jurors, to inform the prospective panel that the plaintiff has remarried but that such fact cannot be used in arriving at damages. See, Watson v. Fischbach, 54 Ill.2d 498, 301 N.E.2d 303 (1973); Dubil v. Labate, 52 N.J. 255, 245 A.2d 177 (1968). While we approve of both the logic and procedure enveloped by this approach, we believe it transcends the state-

ment of Hing and accordingly abstain from approval.

These approaches would resolve the narrow issue placed before this court by appellants; that counsel should be permitted to inform the jury of plaintiff's remarriage if plaintiff is referred to by a surname of the first marriage. However, we cannot adopt either of the stated approaches and consequently affirm the trial court's decision to exclude any references to remarriage. This should not be interpreted to mean that counsel has no rights as they relate to the remarriage of a spouse.

It is imperative that both counsel be afforded a fair and impartial jury. If there was no method for counsel to discover if a prospective juror knew the present spouse of the plaintiff, it would invite potentially biased jurors. We believe that such discovery can be made in a manner that is consistent with the rule prohibiting evidence of remarriage as espoused in Hing.

We agree with the approach presently used in California, Ohio and Rhode Island. See, Wiesel v. Cicerone, 106 R.I. 595, 261 A.2d 889 (1970); Cherrigan v. City and County of San Francisco, 262 Cal.App.2d 643, 69 Cal.Rptr. 42 (1968); Helmick v. Netzley, 40 Ohio Op.2d 104, 12 Ohio Misc. 97, 229 N.E.2d 476 (1967).

The approach used in those jurisdictions is succinctly summarized in Watson v. Fischbach, supra:

"Adequate protection from partial jurors is thought to be secured by permitting *voir dire* examination of prospective jurors regarding their acquaintanceship with a person by the name of the new spouse, not disclosing the relationship of that person to plaintiff . . . Additionally, it [holds] that other witnesses related to the new spouse could be presented in similar fashion, or questions might be asked about them or their businesses in order to determine whether the prospective jurors were in any manner acquainted with them; it is clear, however, that no disclosure of the fact of remarriage would be permitted." 54 Ill.2d at 502, 301 N.E.2d at 305–306.

■ Appellants Ashton Construction Company and State of Arizona lastly contend that certain remarks of counsel for appellees opened the door for evidence of remarriage. The precise language arose in closing argument when counsel for appellees stated:

"This is the last chance with reference to Kim Cress that the jury can balance the scales; it's the last chance with reference to Lois Cress that the scales can be balanced. Half justice is injustice. Not taking into consideration each of these awards as injustice, each of you, you see, hold in essence, the economic livelihood of Kim and Lois Cress in your hands."

We note that there was no objection to the remarks at the time they were made. We are also aware that "it is conceivable that evidence offered by a surviving spouse could open the door to the fact of remarriage." City of Phoenix v. Whiting, supra. However, because of the duration of the trial and the complete absence of allusion to other allegedly reversible remarks, we do not believe that the single comment by counsel for appellee rose to the level of allowing evidence of remarriage.

The judgment of the trial court is affirmed.

DONOFRIO, P. J., and STEVENS, J., concur.