613 P.2d 278

**CITY OF GLENDALE, a body politic, Appellant,**

v.

**FARMERS INSURANCE EXCHANGE, Truck Insurance Exchange, and Mid-Century Insurance Company, corporations, Appellees.**

**No. 14725–PR.**

Supreme Court of Arizona, En Banc.

June 3, 1980.

Rehearing Denied July 1, 1980.

Biaett, Bahde & McCarthy by Kenneth Biaett and Hewitt Biaett, Glendale, for appellant.

Lewis & Roca by D. W. Grainger, Paul G. Ulrich and Arnold L. Rotkin, Phoenix, for appellees.

HAYS, Justice.

In February of 1969, Veryl Evelyn Fandrey was introduced to Glen Bradshaw at a Glendale, Arizona tavern. The two shared conversation, cocktails and dance and eventually left in Mrs. Fandrey's auto. Although there is evidence that Mrs. Fandrey had, earlier in the evening, consumed several highballs, the record indicates that only two or three were had during her encounter with Mr. Bradshaw.

With Mrs. Fandrey driving, the pair proceeded north on 55th Avenue. This thoroughfare terminated at its intersection with West Royal Palm Road, requiring a left-hand turn by northbound motorists. A mound of soil was located at the northern border of the crossing. Although the City of Glendale had previously erected a sign warning of the detour, it had collapsed three months earlier and was buried in adjacent brush.

Apparently unaware of impending danger, upon arrival at West Royal Palm Road, Mrs. Fandrey drove directly through the intersection. She continued over the dirt embankment, its incline propelling the car into the air, and landed 66 feet later in an adjacent field. As a result of the impact, Mr. Bradshaw suffered severe brain damage, the loss of his left eye, and permanent mental disability.

In May of 1970, Corena Bradshaw, Glen Bradshaw's wife, brought suit, both individually and as guardian of her incompetent spouse. Joined as defendants were Evelyn Fandrey, for negligent operation of the automobile, and plaintiff-appellant, City of Glendale, for failure to properly warn of the hazard.

At all times relevant hereto, the City of Glendale (hereinafter referred to as the City) was insured against liability by defendant-appellee, Farmers Insurance Exchange (hereinafter referred to as Farmers or the insurer). The policy provided a maximum of $100,000 coverage and noted that "the company shall have the right and duty to defend any suit seeking damages on account of bodily injury . . .." The manner in which Farmers conducted settlement negotiations has given rise to the instant dispute.

Upon receiving the case, Farmers commenced investigation of the accident in order to determine the possible extent of liability of its insured. Accident reconstruction experts were employed and advised the insurer that at the time of the accident, the Fandrey automobile exceeded the 25 m.p.h. speed limit by a minimum of 15 and possibly 25 m.p.h. Moreover, Farmers was informed that both accident and injury could have been avoided by a sober motorist, maintaining lawful speed. Further, two eyewitnesses estimated Mrs. Fandrey's speed at approximately 40 m.p.h.

Settlement value of the case was further explored through examination of the governing case law. Farmers' research revealed an opinion unique in its similarity to the *Bradshaw v. Glendale* litigation. In *City of Phoenix v. Lopez*, 77 Ariz. 146, 268 P.2d 323 (1954), the plaintiff was a passenger in a car being driven greatly in excess of the permissible speed. When the road narrowed from four to three lanes, the vehicle struck a telephone pole located adjacent to the thruway. The passenger brought an action against the City of Phoenix for, *inter alia*, negligent construction and for failure to properly warn of the narrowing of the roadbed.

We held in that opinion that, in Arizona, the standard of care imposed upon a municipality in the construction and maintenance of its streets is that of the ordinarily prudent person. We then noted:

"This question now presents itself: Must the city, under the duty attributable to an ordinarily prudent person, construct and maintain its streets for unlawful use? In the *Mayfield* case, supra, it is pointed out that the city's duty extends only to those 'exercising ordinary care and caution'. Persons making unlawful use of the streets are not in this category.

. . . . .

"The fact that the negligence of the driver is not imputable to plaintiff's decedent cannot affect the result. (citation omitted)." 77 Ariz. at 150–51, 268 P.2d at 325.

Applying this language to the circumstances of the Bradshaw litigation, the insurer predicted a probable successful defense and thereupon offered only $25,000 of the $100,000 policy in settlement. Rejecting this proposal, the Bradshaws countered with a figure of $275,000. No further settlement negotiations developed and the cause was placed upon the civil calendar.

As the trial date approached, however, the city, apparently concerned about the possibility of a verdict exceeding the limit of its coverage, demanded in writing that the insurer offer Mrs. Bradshaw the full $100,000 policy maximum. Farmers, nevertheless, relied upon its previous evaluation and declined to increase its original offer of settlement.

Having failed to negotiate an acceptable compromise, the *Bradshaw v. Fandrey-Glendale* cause of action proceeded to trial. Mrs. Bradshaw was awarded $280,000 plus costs and the city's appeal was unsuccessful. *City of Glendale v. Bradshaw*, 16 Ariz.App. 348, 493 P.2d 515, *aff'd in part, rev'd in part on other grounds*, 108 Ariz. 582, 503 P.2d 803 (1972).

The city subsequently initiated the instant litigation against the insurer for breach of its duty of good faith. A directed verdict was entered against the city at the close of its evidence, from which Glendale appealed. The Court of Appeals, in a memorandum decision, reversed. Taking jurisdiction of the insurer's petition for review pursuant to A.R.S. § 12–120.24 (Supp.1979), we vacate the memorandum decision of the Court of Appeals and affirm the order of the trial court for directed verdict.

Both parties to the dispute at bar agree that by virtue of its contractual control of the litigation, the insurer owes a duty of "good faith" to its insured. *Farmers Insurance Exchange v. Henderson*, 82 Ariz. 335, 313 P.2d 404 (1957). In *Farmers*, we defined this term with greater particularity. "Good faith," we held, imposes upon the insurer an obligation to give equal consideration to both the interests of itself and of its insured.

> "It occurs to us that when the insurer is defending litigation against the insured, employs attorneys to represent the interests of both and has sole power and opportunity to make a settlement which would result in the protection of the insured against excess liability, common honesty demands that it not be moved by partiality to itself nor be required to give the interests of the insured preferential

consideration. A violator of this rule of equality of consideration cannot be said to have acted in good faith. (citation omitted)." 82 Ariz. at 338, 313 P.2d at 406.

Thus, upon an allegation of bad faith, the insured must demonstrate to the trial court or fact finder that the insurer placed paramount importance upon its own interests or failed to give consideration to the welfare of the insured. With this in mind, our analysis next focuses upon the quantum of proof necessary in a case involving a directed verdict.

The appellate courts of this state have addressed this issue on several occasions and have held that in order to avoid a directed verdict, the non-movant must establish a prima facie case. *Avechuco v. Awtrey*, 106 Ariz. 44, 470 P.2d 451 (1970); *Robledo v. Kopp*, 99 Ariz. 367, 409 P.2d 288 (1965). In other words, viewing the evidence in the light most favorable to the non-movant, *Avechuco, supra*, there must be evidence sufficient to justify, although not necessarily compel, an inference of liability. *Robledo, supra*.

In the case at bar, the trial court felt that the city had failed to meet its burden in this regard, and we agree. The only evidence of bad faith presented by the city was the testimony of three alleged experts. Both the mayor and city attorney of Glendale, as well as the Bradshaw attorney from the initial negligence litigation, testified regarding their familiarity with the suit and their evaluation of the case as one with a high likelihood of recovery in excess of policy limits. We note, however, that upon cross-examination, each of the witnesses admitted ignorance of the previously quoted language of *Lopez, supra*. Although our Court of Appeals subsequently explained our holding in *Lopez* as permitting a showing of negligence on the part of the municipality, *Collins v. County of Maricopa*, 15 Ariz.App. 354, 488 P.2d 991 (1971), *Collins* was not decided until several months after the initial *Bradshaw v. Glendale* litigation and can in no way affect the insur-

er's right to rely upon the broad language of *Lopez.*

Similarly, the city's reliance upon its "demand letter" is misplaced. Although we agree that, under ordinary circumstances, an attorney should abide by the specific mandate of his or her client, as this opinion has indicated, the liability insurer's obligation is one of *equal* consideration. *Farmers Insurance, supra.* The insurance company may additionally entertain its own interests. For example, the fact of a demand alone should not be sufficient cause to require a $100,000 offer when a diligent, good-faith investigation reveals a settlement value of only $25,000.

We therefore find that the trial court correctly granted the insurer's motion for directed verdict. In view of this disposition, we need not address the remaining allegations raised by the parties.

The decision of the Court of Appeals is vacated and the order directing a verdict in favor of the insurer is affirmed.

STRUCKMEYER, C. J., HOLOHAN, V. C. J., and CAMERON and GORDON, JJ., concur.