# CASES

## ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF ILLINOIS.

CHICAGO AND EASTERN ILLINOIS RAILROAD COMPANY

v.

CLARA C. DRISCOLL, Admx.

*Opinion filed December 16, 1903—Rehearing denied February 5, 1904.*

1. MASTER AND SERVANT—*whether a particular act is performed as vice-principal or fellow-servant is for the jury.* Whether an assistant yard-master of the defendant was acting as vice-principal or as a fellow-servant of members of a switching crew in giving a signal to the crew to move a train of cars is a question of fact for jury.

2. SAME—*what does not relieve defendant from liability for act of vice-principal.* If defendant's assistant yard-master acts as vice-principal in giving a signal to a switching crew to start a train, the fact that he gave the signal in the same manner that it would be given by a member of the switching crew does not relieve the defendant from liability for an injury caused thereby.

3. SAME—*when the question of negligence is properly left to the jury.* Whether defendant's assistant yard-master was negligent in not ascertaining whether the rear car on a spur track was on the rails before giving the switch crew a signal to pull up is properly left to the jury, where there is evidence tending to show that the car had been off the track for forty minutes but that he gave the signal before the switch crew had time to make any investigation.

4. DAMAGES—*re-marriage of plaintiff cannot be considered in mitigation of damages.* The re-marriage of plaintiff in an action for

damages for the alleged negligent killing of her husband cannot be considered by the jury in mitigation of damages.

5. EVIDENCE—*what may be shown in an action for negligence.* In an action based upon the alleged negligence of defendant's assistant foreman in signaling a switch crew to pull a string of cars from a spur track before he knew whether or not the rear car was on the rails, it is proper to show he frequently looked the cars over and reported their condition to the switch crew, and that in such case the crew did not examine the cars before moving them.

WILKIN, J., dissenting.

*C. & E. I. R. R. Co.* v. *Driscoll,* 107 Ill. App. 615, affirmed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. R. W. CLIFFORD, Judge, presiding.

W. H. LYFORD, (ALBERT M. CROSS, of counsel,) for appellant.

JAMES C. MCSHANE, for appellee.

Mr. CHIEF JUSTICE HAND delivered the opinion of the court:

This is an appeal to review the action of the Appellate Court for the First District in affirming a judgment for $5000, recovered in an action on the case brought by the appellee, as administratrix, against the appellant, in the circuit court of Cook county, for damages alleged to have been sustained by her by reason of the death of her husband. The case was before this court at a former term, (176 Ill. 330,) when a judgment in favor of plaintiff for a like amount was reversed and the cause remanded for a new trial.

It appears from the evidence that appellant had two switching crews engaged in handling cars in its yard in the city of Chicago. Each crew consisted of five men,— an engineer, a fireman, a foreman and two helpers. One crew was known as Ward's crew and the other as Hurd's

crew. The deceased was a helper with Ward's crew. The appellant had three stub-tracks in its yard, upon which cars were placed while being repaired, and were designated as tracks No. 1, No. 2 and No. 3. These stub-tracks had no butt-posts, but were left open, so that cars, when pushed too far thereon, would run off on to the ground. On the evening of the injury Hurd's crew went in on track No. 1 with their engine and pushed the cars, eleven in number, standing upon that track, together. The car at the end of the track was an empty flat-car and was left with the brake set, with the rear wheels about ten inches from the end of the rails. They then pushed the cars, six in number, upon track No. 2, together. They then went in on track No. 3, coupled together the cars on that track, seven in number, pulled up and backed in on track No. 2 and coupled to the cars on that track, and then pulled up and backed in on track No. 1 and coupled to the cars standing upon that track, the result of which was, they had a train of twenty-four cars. Without going to the rear of the train to see whether the wheels of the rear car were upon the track, the crew were ordered by Blake, the assistant night yard-master of appellant, to go to another part of the yard to do some switching, and Ward's crew, which was at work in the yards some distance from track No. 1, were ordered by him to take out the train left by Hurd's crew on track No. 1 and break it up. In going to that track Ward's engine was taken too far south. When Ward discovered this he sent the deceased to bring it back. Blake, who had gone to that part of the yard before the arrival of the deceased, stopped the engine, and he and Jordan, the other helper in Ward's crew, got on the north end of the engine, which was proceeding in the direction of track No. 1. On their way to that track they passed the deceased. Whether he got on the south end of the engine is not shown. When deceased started to bring back the engine, Ward started to look over the

train on track No. 1. When the engine arrived, it hitched on to the south end of the train. Ward was then about eight car-lengths from its south end. The train filled track No. 1 and extended on to track No. 19, with which tracks No. 1, No. 2 and No. 3 connected. Blake went to where Ward was standing and said to him the train was all right; to go ahead; and then gave the signal to the engineer to go ahead. The deceased was not seen by Blake or any of the crew, so far as the evidence shows, after the engine passed him, until the train started. It was customary for one helper to go ahead of the engine to open switches, give signals, etc., and for one to go in the rear to close switches, give signals, etc. A number of cars were standing on a track near where track No. 1 joined track No. 19. The rear truck on the car at the end of track No. 1 had run off the rails on to the ground. When the train was pulled forward, the truck ran on the ties until it came to track No. 19, when the car collided with the cars standing on the adjoining track, and the deceased, being between the standing and moving cars, was thrown down and run over and killed.

A right of recovery upon the first trial was predicated upon three grounds: First, the negligence of the appellant in failing to place a butt-post at the end of track No. 1; second, the negligence of the crew of Hurd in leaving the train with the rear truck of the last car upon track No. 1 off of the rails; and third, the negligence of Blake, the appellant's assistant yard-master, (who, it was averred, knew, or by the exercise of ordinary care might have known, the car was off the track, and knew, or ought to have known, that the deceased and his crew were ignorant thereof,) in ordering the crew of which deceased was a member, to attach the engine to and move the train without notifying them of the position of the car on track No. 1, which was off of the rails, or giving them time to make an examination of the train with the view to obtain that information for themselves.

In the former opinion of this court it was held that the failure to have a butt-post at the end of track No. 1 was not negligence on the part of appellant, and that the members of the Hurd and Ward crews were fellow-servants as a matter of law, and that there could be no recovery by reason of the negligence of the Hurd crew. It was also held there could be no recovery by reason of the negligence of Blake, as assistant night yard-master, unless the evidence showed, which it did not, that he had actual notice that the car was off the track, or that said car had been off the track for so long a time that in the exercise of ordinary care he was bound to know such car was off the track at the time he ordered the train to be moved. On the last trial the first two grounds of recovery were abandoned and the appellee relied solely for a recovery upon the negligence of Blake, and endeavored to supply the proof which the court had held was wanting on the first trial. No claim is made that Blake had actual notice that the car was off the track when he ordered the train to be pulled out. The question, therefore, arising for our determination upon this record is, does the proof, with all the inferences that may legitimately be drawn therefrom, fairly tend to show that the car had been off the track for so long a time before Blake gave the order to move the train, that he, in the exercise of ordinary diligence, ought to have known that the car was off the track?

On the first trial it did not appear which crew pushed the car off the track, or how long it had been off before the order was given by Blake to move the train. The evidence in the last trial shows that when the eleven cars on track No. 1 were pushed together by Hurd's crew the brake was set and the wheels of the last car were left within ten inches of the ends of the rails; that afterwards a train of thirteen cars was pushed in on track No. 1 against the cars standing on that track, and that while the coupling was carefully made the cars were moved

somewhat. One witness states they were moved six or eight inches at the point of coupling, and that there was more or less slack between the cars. No other engine came in contact with said train until Ward's crew took hold of it with their engine, with the view of pulling it out and breaking it up. The car was therefore pushed off the rails either by the engine of the Hurd or the engine of the Ward crew. The evidence tends to show when Ward's engine was attached the train was not moved. When Hurd's engine went in on track No. 1 it had hold of thirteen cars. When the Ward engine took hold of the train no cars were attached to it. An examination of the ground after the accident occurred showed the wheels of the last car on track No. 1 were off the rails, on the ground, several feet. This could be accounted for, in part, by reason of the fact that the ends of the rails were several inches higher than the ground. . In view of this evidence, which engine pushed the car off the track was a question of fact to be determined by the jury. If it be conceded that the engine of the Hurd crew pushed the car off, then the evidence fairly tends to show that it was off the track at least forty minutes before the order was given by Blake to pull out the train, which the jury might reasonably have found, from the evidence, was ample time within which Blake should have learned the fact that the car was off the track, and that if he did not ascertain that fact within that time, but ordered the train moved without knowing the condition of the train, he would, as to the deceased, be deemed to know its condition and that the rear car was off the track. We think that the court properly submitted to the jury the question whether Blake ought to have known the car was off the track at the time he gave the order to pull out the train, and that the court did not err in declining to peremptorily instruct the jury to find in favor of the defendant. Futhermore, while the evidence shows it was the duty of Ward's crew, according to their ordinary

course of doing their work, to have examined the train to see that it was in proper condition to be moved before starting to pull it out, the evidence tended to show they did not have time to make such examination before Blake gave the signal to the engineer to go forward. At that time Ward or Jordan had not examined the train, and the evidence tends to show that while the deceased was on the way to the rear of the train, he had not, at the time the order was given by Blake, reached the rear of the train, but was seen by Blake at about the time the train started, in the vicinity of the junction of track No. 1 and track No. 19, which was the point at which he was killed within a few seconds thereafter. It would be a harsh rule of law that would permit no recovery because the deceased did not examine the rear car to ascertain whether it was in shape to be moved, unless he was given an opportunity to make the examination. It was also shown that Blake frequently, when the work was pressing, examined the trains and informed the crews if they were in shape to be moved, in which case they were moved without further examination. In this case Blake said to Ward the cars were in shape to go forward, and gave the signal to the engineer to pull them out.

It is urged, however, there can be no recovery because Blake, in giving the order to move the train, was not performing the act of a vice-principal, but the act of a fellow-servant of the deceased. The question whether Blake at that time was a vice-principal or a fellow-servant was a question of fact for the jury, (*Goldie* v. *Werner*, 151 Ill. 551,) and although he was acting in a dual character, the question whether the particular act of signaling the engine to start was the act of a vice-principal or the act of a fellow-servant of the deceased was also a question of fact for the jury, (*Mobile and Ohio Railroad Co.* v. *Massey*, 152 Ill. 144,) and if the train was started by Blake by reason of the authority which he exercised as vice-principal, the fact that he gave the signal to start

in the same manner that similar signals were given by the members of the switching crews would not relieve appellant from liability. *Graver Tank Works* v. *O'Donnell,* 191 Ill. 236. See, also, *Norton Bros.* v. *Nadebok,* 190 Ill. 595.

The court instructed the jury that they should not take into consideration, in mitigation of damages, the fact that plaintiff had re-married subsequently to the death of her intestate. We are of the opinion the court did not err in so instructing the jury. (*Chicago, Peoria and St. Louis Railroad Co.* v. *Woolridge,* 174 Ill. 330.) In volume 8 of the American and English Encyclopedia of Law, (2d ed.) on page 937 it is said: "In an action by a husband to recover for the wrongful killing of his wife, in which one of the principal elements of damage is the loss to him of his wife's services, the defendant cannot show, in reduction of damages, that the plaintiff has married a second wife, who performs for him all the services rendered by his deceased wife." And in *Philpott* v. *Pennsylvania Railroad Co.* 175 Pa. St. 570, the same rule was held to apply where the suit was by a wife who had married since the death of her husband, for whose wrongful death the suit was brought.

We find no reversible error in the other instructions given on behalf of the appellee. Nor do we think it was error to permit the appellee to prove that Blake often looked the cars over and reported their condition to the crew before they were moved, and that under such circumstances the crew did not examine the cars before moving them.

Finding no reversible error in this record, the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*

Mr. JUSTICE WILKIN, dissenting.