(No. 45343.—

BEVERLY A. WATSON, Appellant, v. LEANDER FISCH-
BACH *et al.*, Appellees.

*Opinion filed May 21, 1973.—Modified on denial of rehearing
September 27, 1973.*

PETER FITZPATRICK, FRANCIS W. GULBRAN-
SON and MICHAEL FITZPATRICK, all of Chicago
(FITZPATRICK & GULBRANSON, of counsel), for appel-
lant.

RISSMAN, JENKINS & KLEIN, of DeKalb (ROBERT
C. JENKINS, of counsel), for appellee Leander Fischbach,
individually and d/b/a Fischbach Bar.

O'BRIEN, BURNELL, PUCKETT & BARNETT, of Aurora (DONALD E. PUCKETT and PETER K. WILSON, JR., of counsel), for appellee Herman Johnson, individually and d/b/a Johnson's Tavern.

ROBERT K. CLARK, of Rockford, for appellee John King, individually and d/b/a Clover Leaf Tap.

MR. CHIEF JUSTICE UNDERWOOD delivered the opinion of the court:

Plaintiff Beverly A. Watson, as personal representative of her deceased husband and for the benefit of her minor daughter and herself, brought this dramshop action against defendant tavern keepers for injury to plaintiff's means of support and for property damage. It was alleged that decedent's death, which occurred as a result of his car leaving the paved road and striking a telephone pole while he was the driver and sole occupant, resulted from his intoxication caused in whole or in part by alcoholic liquor purchased and consumed in the several places of business owned and operated by defendants. A jury trial resulted in a verdict for all defendants upon which judgment was entered. That judgment was affirmed on direct appeal to the appellate court. (6 Ill. App. 3d 166.) We granted leave to appeal.

Plaintiff urges here that the trial court rulings permitting the jurors to be informed of her remarriage and interrogated regarding their acquaintanceship with her second husband, when coupled with cross-examination which established that the family was living in the same home occupied during the first marriage and that a son had been born to the second marriage, constituted reversible error necessitating a retrial. Additionally, plaintiff contends the trial court erred in rejecting her offer of proof of the results of a blood alcohol test performed on her deceased husband. In our judgment, however, the appellate court disposition of the latter issue was correct and adequate, and there is no need for further discussion here.

We recently (*Mulvey v. Illinois Bell Telephone Co., 53 Ill.2d 591*) had presented to us the question of the propriety of any reference in a jury trial to plaintiff's remarriage. While we there found it unnecessary to discuss the issue since the not guilty verdict indicated the jury had not reached the question of damages, the frequency with which the question arises persuades us that this court should speak to it.

The propriety of reference, in the trial of an action for the wrongful death of a deceased spouse, to the remarriage of the surviving spouse must be examined both as to its relevancy in determining damages and its relevancy in the selection of a fair and impartial jury. A very substantial majority of the jurisdictions which have considered the first question have held that remarriage of the surviving spouse, or the possibility thereof, does not affect the damages recoverable for the wrongful death of the deceased spouse. (Annot. (1963), 87 A.L.R.2d 252 (Michigan now appears to have reversed its minority position cited in the annotation; see *Bunda v. Hardwick (1965), 376 Mich. 640, 138 N.W.2d 305); Stuart v. Consolidated Foods Corp. (1972), 6 Wash. App. 841, 496 P.2d 527; Dubil v. Labate (1968), 52 N.J. 255, 245 A.2d 177; Wiesel v. Cicerone (1970), 106 R.I. 595, 261 A.2d 889.*) This view prevails in Illinois (*Chicago and Eastern Illinois R.R. Co. v. Driscoll, 207 Ill. 9; Mulvey v. Illinois Bell Telephone Co., 5 Ill. App. 3d 1057, aff'd on other grounds, 53 Ill.2d 591*), and we have no reason to question its validity.

Stating that rule, however, is not dispositive of the more troublesome question of the relevancy of plaintiff's remarriage to the selection of a fair and impartial jury. Defendants, generally, urge that their right to jurors uninfluenced by possible relationships or acquaintanceships with plaintiff's new spouse or members of that family necessitates revealing to the jury the fact of plaintiff's remarriage and the identity of the new mate. Some, of course, would go farther and adopt the Wisconsin

rule (*Jensen v. Heritage Mutual Insurance Co. (1964), 23 Wis. 2d 344, 127 N.W.2d 228*) which holds remarriage or the possibility of it are proper factors for the jury's consideration in assessing damages in a wrongful death action. (See, also, *Campbell v. Schmidt (Miss. 1967), 195 So. 2d 87.*) Conversely, plaintiffs, generally, urge that such revelation inevitably results in a greater likelihood of a not guilty verdict, or, at the very least, a diminution of the damages which would otherwise have been awarded, and that this occurs despite cautionary instructions by the judge that the plaintiff's remarriage is totally irrelevant to the issues of liability and damages.

We are not persuaded that jurors will so far abdicate their responsibilities as to consider a remarriage in determining liability, assuming a properly restrictive and cautionary instruction has been requested and given. (*Mulvey; Thompson v. Peters (1972), 386 Mich. 532, 194 N.W.2d 301.*) And the possibility that the amount of damages awarded may be affected by knowledge of the fact that plaintiff has remarried, if it exists, must be weighed against what seems to us an element essential to the integrity of the jury trial process: that the parties to the litigation have a reasonable opportunity to ascertain that the fact-finding body is free from influence-producing relationships unfavorable to them.

There is no unanimity among the courts which have considered the relevance of a plaintiff's remarriage in the context of *voir dire* examination. The opposing views are perhaps best illustrated by *Wiesel v. Cicerone (1970), 106 R.I. 595, 261 A.2d 889,* and *Dubil v. Labate (1968), 52 N.J. 255, 245 A.2d 177.* In *Dubil* the Supreme Court of New Jersey concluded that "It would be offensive to the integrity of the judicial process if the plaintiff, after taking an oath to be truthful, were permitted to misrepresent her marital status to the jury. Of course, the defendants may not inquire into the details of the remarriage nor may they offer evidence concerning it. However, the desirable

exclusion of evidence relating to the remarriage may not be carried to the point of affirmatively misrepresenting the truth to the jury. It seems to us that in the course of the trial of a wrongful death case, it would be virtually impossible to avoid mention of a remarriage without resorting to untruths. [Citations omitted.] Thus, we believe that—while evidence of the details of a remarriage, such as the earnings of the new spouse or the birth of a child, is to be excluded—the mere fact of a plaintiff's remarriage should not be kept from the jury." (52 N.J. at 261-262, 245 A.2d at 180.) In *Wiesel* the Supreme Court of Rhode Island characterized the disclosure of the remarriage as "putting a premium on form and overlooking substance." (106 R.I. at 607, 261 A.2d at 895.) That court concluded that an instruction telling the jurors that evidence of the remarriage was not to be considered by them would not "outweigh the likelihood of misuse of such evidence by the jury." (106 R.I. at 607, 261 A.2d at 895.) Accordingly, it determined to follow the practice approved by the trial and intermediate courts of California, Ohio and New York (*Cherrigan v. City and County of San Francisco (1968), 262 Cal. App. 2d 643, 69 Cal. Rptr. 42; Helmick v. Netzley (1967), 40 Ohio Op. 2d 104, 229 N.E.2d 476, 12 Ohio Misc. 97; Rodak v. Fury (1969), 31 App. Div. 2d 816, 298 N.Y.S.2d 50*), pursuant to which no disclosure of the fact of remarriage is permitted. Adequate protection from partial jurors is thought to be secured by permitting *voir dire* examination of prospective jurors regarding their acquaintanceship with a person by the name of the new spouse, not disclosing the relationship of that person to plaintiff. While the factual situations vary in that the new spouse may or may not have been physically present so that the jurors might view him or her in determining their acquaintance, the Rhode Island court apparently held that either method was permissible. Additionally, it held that other witnesses related to the new spouse could be presented in similar fashion, or

questions might be asked about them or their businesses in order to determine whether the prospective jurors were in any manner acquainted with them; it is clear, however, that no disclosure of the fact of the remarriage would be permitted.

We are inclined to agree with the position taken by the New Jersey Supreme Court. There is, to us, a patent offensiveness in a rule which countenances false statements made under oath in a judicial proceeding on the theory that, unless false testimony is permitted, jurors will disregard the instructions of the court to the prejudice of the plaintiff.

We believe the judicial process in its search for truth need not resort to the condonation of perjury to accomplish its objective, and we accordingly hold that prospective jurors may be told by the judge that a plaintiff has remarried. Beyond this point, however, we believe defendants have no legitimate interest in exploring. They are, in our judgment, sufficiently protected in their right to an impartial jury by disclosure of the fact of remarriage and identification of the new spouse, coupled with the opportunity to determine the extent of acquaintanceship between the prospective jurors and new spouse. And, we believe, the plaintiff's right to a trial free from factors irrelevant to the issues of liability and damages is adequately assured by the fact that the judge will in his initial identification of the parties state the fact of remarriage, identify the new spouse and advise the prospective jurors that the plaintiff's remarriage is not to be considered by them on the issues of liability or damages. A similar instruction, if requested by plaintiff, will be given at the close of the case as a part of the written instructions. Beyond the *voir dire*, questions, comments or argument relating to the remarriage will, ordinarily, be improper.

We come now to an assessment of the effect of the cross-examination of plaintiff regarding her remarriage which she contends constituted reversible error. That

504

cross-examination, as noted by the appellate court, clearly exceeded the scope of the direct examination. Its purpose was to and it did emphasize plaintiff's remarriage and disclose to the jury that plaintiff had a child by the new husband and that she and the new family were living in the home formerly occupied by plaintiff and her deceased husband. The questions resulting in these disclosures were vigorously objected to and a mistrial was sought. The objections were overruled and a mistrial denied. The questions and resulting answers were clearly irrelevant under earlier decisions; they substantially exceed the improprieties complained of in *Mulvey v. Illinois Bell Telephone Co., 53 Ill.2d 591,* and, in our judgment, constitute reversible error.

The judgment of the appellate court is accordingly reversed and the cause remanded to the circuit court of De Kalb County for a new trial.

*Reversed and remanded.*