NEELY DOTSON, Adm'r of the Estate of Ida Dotson, Deceased, Plaintiff-Appellant, v. SEARS, ROEBUCK & COMPANY, Defendant-Appellee.

First District (3rd Division)   No. 1—88—3157

Opinion filed May 23, 1990.

Lane & Munday, of Chicago (John J. Munday, of counsel), for appellant.

Arnstein & Lehr, of Chicago (Arthur L. Klein, Patrick F. Geary, and Kurt J. Heinz, of counsel), for appellee.

JUSTICE FREEMAN delivered the opinion of the court:

Plaintiff, Neely Dotson, appeals from a judgment entered on a jury award of $450,000 for plaintiff as the administrator of the estate of Ida Dotson upon a retrial of his wrongful death action against defendant, Sears, Roebuck & Company. This is the second appeal in this case. In the first (*Dotson I*), this court, *inter alia*, vacated a $1.7 million award to the estate of Ida Dotson. (157 Ill. App. 3d 1036, 510 N.E.2d 1208.) The only facts which we need repeat here are that plaintiff and Ida Dotson were husband and wife, that the trial concerned damages only, defendant having admitted liability, and that plaintiff remarried after Ida's death.

On appeal, plaintiff's sole contention is that the trial court erred in instructing the jury to limit his damages to the loss sustained from the time of Ida's death to the time of his remarriage. Plaintiff asserts that the court should have, instead, instructed the jury that his remarriage did not mitigate his damages for the loss of Ida's material services. We find this appeal to be a totally unsupportable attempt to relitigate an issue litigated in *Dotson I* and therein clearly and unequivocally decided against plaintiff. Consequently, we affirm the judgment of the trial court.

In bringing this appeal, plaintiff chiefly relies on *Watson v. Fischbach* (1973), 54 Ill. 2d 498, 301 N.E.2d 303. *Watson* held that, in Illinois, as in the majority of States that had by then considered the question, a surviving spouse's remarriage did not affect the damages recoverable for the wrongful death of the deceased spouse. (*Watson,* 54 Ill. 2d at 500.) Plaintiff asserts that *Watson* required the trial court to give the instruction he requested.

Plaintiff concedes that this court previously decided that: (1) evidence of the quality of plaintiff's marriage to Ida was improperly admitted at trial because plaintiff had withdrawn his claim for loss of consortium; and (2) the jury should have been informed of the remarriage and the identity of his new wife. Tacitly attempting to avoid the doctrine of the law of the case, however, plaintiff asserts that the precise issue of whether remarriage mitigates damages for loss of material services was not previously before this court. In so arguing, we believe that plaintiff has disregarded the issues raised by the parties in the first appeal and this court's decision thereon, as reflected in our prior opinion.

In that appeal, defendant contended that, having withdrawn his claim for loss of consortium, plaintiff was improperly allowed to adduce evidence of the quality of his marriage to Ida. Plaintiff contended that that evidence was properly admitted at trial because the withdrawal of his claim for loss of consortium did not preclude a recovery for the loss of Ida's material services and that evidence was relevant to those services. *Dotson,* 157 Ill. App. 3d at 1043.

In rejecting plaintiff's arguments, this court noted that a spouse's personal services have traditionally been recoverable in wrongful death actions; that notwithstanding *Watson,* claims for loss of consortium were not recoverable in such actions until *Elliott v. Willis* (1982), 92 Ill. 2d 530, 442 N.E.2d 163; that *Carter v. Chicago & Illinois Midland Ry. Co.* (1985), 130 Ill. App. 3d 431, 474 N.E.2d 458, had held that *Elliott* had implicitly overruled *Watson* and that evidence of remarriage was relevant to a claim for loss of consortium be-

cause recovery therefor was limited to "actual loss," *i.e.,* "loss up to the time of remarriage" *(Carter,* 130 Ill. App. 3d at 436). We further concluded that, although not specifically so held in *Elliott* or *Carter,* material services had always been a component of a claim for loss of consortium. We so concluded on the basis that the appellate court decision which *Elliott* affirmed and *Dini v. Naiditch* (1960), 20 Ill. 2d 406, 170 N.E.2d 881, which it cited in defining consortium, both defined consortium as including material services. We also concluded that the recovery for loss of material services allowed in wrongful death actions prior to *Elliott* had been a necessary departure from this general rule. Lastly, we concluded "that *Elliott* mandates a finding that material services are now recoverable in wrongful death actions only as part of a loss of consortium claim." *Dotson,* 157 Ill. App. 3d at 1043-44.

Defendant next argued that, having improperly allowed plaintiff to separate and pursue a claim for lost services from his withdrawn claim for loss of consortium, the trial court further erred in excluding evidence of plaintiff's remarriage. Plaintiff responded, *inter alia,* that *Carter* held evidence of remarriage relevant only to a claim for loss of consortium which did not include material services. *Dotson,* 157 Ill. App. 3d at 1044-45.

This court rejected plaintiff's attempt to distinguish *Carter.* Specifically, we held evidence of remarriage properly admissible to limit his recovery for lost material services to actual loss, relying upon *Carter.* That holding was based on our disagreement with plaintiff that the claim for loss of consortium recognized in *Elliott,* and as to which remarriage was held relevant in *Carter,* did not include material services. *Dotson,* 157 Ill. App. 3d at 1045.

*Dotson I* thus clearly reveals that, contrary to plaintiff's assertion, the issue whether remarriage mitigates damages for loss of material services was previously before this court. Specifically, it was put in issue by plaintiff's argument, in defending the exclusion of evidence of his remarriage, that *Carter* held evidence of remarriage relevant only to a claim for loss of consortium not including material services. Given our conclusion that, after *Elliott,* material services are recoverable only as part of a loss of consortium claim, it necessarily followed that *Carter's* holding had to be applied to claims for lost material services.

This holding, upon a question of law, constituted the law of the case binding both the trial court upon remand and this court upon a subsequent appeal and precluding a relitigation of the issue on the merits. (*Gord Industrial Plastics, Inc. v. Aubrey Manufacturing, Inc.*

(1984), 127 Ill. App. 3d 589, 469 N.E.2d 389.) The only question we can consider in this appeal is whether the trial court followed our mandate. (*Yonan v. Oak Park Federal Savings & Loan Association* (1975), 27 Ill. App. 3d 967, 326 N.E.2d 773.) It is obvious from the very fact of this appeal that it did.

■ However, even if we consider plaintiff's arguments on the merits, we reject them.

Again attempting to distinguish *Carter,* plaintiff argues that at the time it was decided no court had held that loss of material services was a component of a loss of consortium claim. As such, plaintiff asserts, *"Carter* did not [*i.e.,* could not] hold that remarriage mitigates damages for loss of services." Moreover, plaintiff argues that this court's conclusion that loss of services is a component of consortium cannot change the pronouncements of the supreme court in *Watson* and *Mulvey v. Illinois Bell Telephone Co.* (1973), 53 Ill. 2d 591, 294 N.E.2d 689, that remarriage does not mitigate loss of services as an element of damages in a wrongful death action.

Preliminarily, we must disagree with plaintiff that, prior to *Carter,* it had not been held that lost material services were a component of a loss of consortium claim. The seminal case so holding and oft-cited for that very proposition is *Dini v. Naiditch* (1960), 20 Ill. 2d 406, 170 N.E.2d 881. (See also *Dralle v. Ruder* (1988), 124 Ill. 2d 61, 529 N.E.2d 209; *Johanek v. Ringsby Truck Lines, Inc.* (1987), 157 Ill. App. 3d 140, 509 N.E.2d 1295; *Pease v. Ace Hardware Home Center* (1986), 147 Ill. App. 3d 546, 498 N.E.2d 343; *Countryman v. County of Winnebago* (1985), 135 Ill. App. 3d 384, 481 N.E.2d 1255; *Brown v. Metzger* (1983), 118 Ill. App. 3d 855, 455 N.E.2d 834, *aff'd* (1984), 104 Ill. 2d 30, 470 N.E.2d 302; *Martin v. Kiendl Construction Co.* (1982), 108 Ill. App. 3d 468, 438 N.E.2d 1187; *Coulter v. Renshaw* (1981), 94 Ill. App. 3d 93, 418 N.E.2d 489; *Sostock v. Reiss* (1980), 92 Ill. App. 3d 200, 415 N.E.2d 1094; *Wood v. Mobil Chemical Co.* (1977), 50 Ill. App. 3d 465, 365 N.E.2d 1087.) Moreover, *Dini* noted that the elements of consortium are "welded into a conceptualistic unity." It also noted that it was "but a theoretician's boast" that consortium was "capable of dismemberment into material services and sentimental services." (*Dini v. Naiditch* (1960), 20 Ill. 2d 406, 427-28, 170 N.E.2d 881.) In addition to *Dini,* we find most instructive of the fallacy of plaintiff's position *Martin v. Kiendl Construction Co.* (1982), 108 Ill. App. 3d 468, 471, 438 N.E.2d 1187, which noted that "[t]he English common law recognized a loss of consortium action in the husband for loss of his *** wife's services."

We must also note that plaintiff has misconstrued the holding in

*Mulvey. Mulvey* did not hold that remarriage was irrelevant to damages in a wrongful death case. While *Watson* did so hold, plaintiff presents no cogent argument for this court to reconsider its prior agreement with *Carter* that *Elliott* had implicitly overruled *Watson.* In fact, plaintiff does not even address that aspect of *Carter.*

*Elliott* held that loss of consortium was recoverable in wrongful death cases. (*Elliott,* 92 Ill. 2d at 541.) While the *Elliott* court did not include material services in its definitions of consortium (*Elliott,* 92 Ill. 2d at 535, 541), as we noted in *Dotson I,* it cited *Dini* in defining consortium and affirmed an appellate court decision which, like *Dini,* defined consortium as including such services. More importantly, we find from its discussion of *Hall v. Gillins* (1958), 13 Ill. 2d 26, 147 N.E.2d 352, *Knierim v. Izzo* (1961), 22 Ill. 2d 73, 174 N.E.2d 157, and *Howlett v. Doglio* (1949), 402 Ill. 311, 83 N.E.2d 708, that the inseparability of consortium into its various elements was at the heart of the *Elliott* court's decision.

In deciding the issue before it, the *Elliott* court first noted that it had declined to recognize common law actions in tort for the destruction of the family unit (*Hall,* 13 Ill. 2d at 27) and for loss of consortium (*Knierim,* 22 Ill. 2d at 81). The court had done so because the remedies sought in *Hall* and *Knierim* were not significantly different from the remedy under the Wrongful Death Act, which allows recovery for " 'pecuniary injuries.' " The court noted the reasoning in *Hall* that the term " ' "pecuniary injuries" ' " as used in the Wrongful Death Act was broad enough to include most of the items of damage claimed by the plaintiffs therein. (*Elliott,* 92 Ill. 2d at 535.) Those claims were loss of support, companionship, guidance, advice, love and affection. (*Hall v. Gillins* (1958), 13 Ill. 2d 26, 31, 147 N.E.2d 352.) The court also noted that *Knierim* had extensively relied upon *Hall. Elliott,* 92 Ill. 2d at 536.

The court then rejected the defendants' reliance upon *Howlett v. Doglio* (1949), 402 Ill. 311, 83 N.E.2d 708, as supporting the conclusion that " 'pecuniary injuries' " under the Wrongful Death Act did not include loss of consortium. *Howlett* held, *inter alia,* that the term pecuniary loss or damage, as used to denote the types of injuries compensable under the Wrongful Death Act, was intended " ' "to discriminate between a material loss which is susceptible of pecuniary valuation, and that inestimable loss of *** society and companionship *** upon which *** it is not possible to set a pecuniary valuation." ' " The court held, *inter alia,* that *Hall* and *Knierim* had implicitly overruled the *Howlett* reasoning. *Elliott,* 92 Ill. 2d at 536-37.

The *Elliott* court's discussion of *Hall, Knierim* and *Howlett* indis-

putably evinces an underlying assumption that consortium is indivisible into its various elements. As such, *Elliott,* together with *Dini* and its progeny, conclusively reveal the fallacy of plaintiff's assertion that, prior to *Carter,* no court had ever held material services to be part of a loss of consortium claim. It unavoidably follows therefrom that, as *Carter* implies in construing *Elliott* as overruling *Watson,* after *Elliott* remarriage limits a claim for material services as much as it limits any other element of consortium.

In fact, as defendant notes, material services may be the element of consortium to which remarriage is most relevant, such services being more readily replaceable than the intangible elements of consortium such as love, guidance and affection, *etc.* As such, plaintiff's position is without merit.

For all the foregoing reasons, we affirm the judgment for plaintiff.

Affirmed.

CERDA, P.J., and WHITE, J., concur.