**2024 IL 129761**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

---

(Docket No. 129761)

PAUL PASSAFIUME, as Independent Administrator of the Estate of Lois Passafiume, Deceased, Appellee, v. DANIEL JURAK, D.O., *et al.*, Appellants.

*Opinion filed September 19, 2024.*

JUSTICE ROCHFORD delivered the judgment of the court, with opinion.

Chief Justice Theis and Justices Neville, Overstreet, Holder White, and Cunningham concurred in the judgment and opinion.

Justice O'Brien took no part in the decision.

## OPINION

¶ 1   At issue in this case is whether, in a claim brought pursuant to the Wrongful Death Act (Act) (740 ILCS 180/0.01 *et seq.* (West 2014)), a plaintiff may be awarded damages for loss of material services beyond the date of the plaintiff's

remarriage.[1] The Appellate Court, Third District, held that a plaintiff's remarriage did not limit his damages for loss of material services. 2023 IL App (3d) 220232. For the following reasons, we affirm the judgment of the appellate court.

¶ 2                                    BACKGROUND

¶ 3        Plaintiff, Paul Passafiume, as independent administrator of the estate of Lois Passafiume, filed a professional negligence complaint against defendants Daniel Jurak, D.O., and Daniel Jurak, D.O., S.C., as well as other defendants not at issue in this appeal, asserting wrongful death and survival actions. Plaintiff alleged that defendants were negligent in their care and treatment of Lois for a blood clot, leading to her death in September 2014. The case ultimately proceeded to a jury trial.

¶ 4        Prior to trial, defendants filed numerous motions *in limine*. Relevant to the instant appeal, defendants filed a motion *in limine* seeking to limit the testimony of plaintiff's expert witness, economist Stan Smith, concerning plaintiff's loss of material services. Defendants moved to limit Smith's opinions and calculations regarding plaintiff's loss of material services damages to the period preceding plaintiff's 2015 remarriage. Defendants maintained that loss of material services damages are part of a loss of consortium claim, which terminate upon a party's remarriage.

¶ 5        Plaintiff agreed that damages for loss of consortium terminate upon a party's remarriage. However, damages for loss of financial support continue beyond the date of remarriage. Plaintiff argued that loss of material services was properly categorized as loss of financial support rather than loss of consortium, so material services damages were not limited by plaintiff's remarriage.

¶ 6        In ruling on the motion *in limine*, the Grundy County circuit court determined that a claim for loss of material services was not part of a loss of consortium claim. For that reason, the trial court stated that it would allow evidence and expert

---

[1]Material services are also described as household or personal services in the case law. For purposes of this opinion, we will use the term "material services."

testimony concerning the value of plaintiff's loss of material services beyond the date of plaintiff's remarriage.

¶ 7        At trial, Smith first testified that the value of plaintiff's loss of financial support was $913,881. Smith calculated plaintiff's loss of financial support by calculating Lois's lost wages, plus Lois's lost employment benefits, minus her personal consumption.

¶ 8        Smith also testified that the value of plaintiff's loss of material services was $998,158. Smith testified that he calculated the value of Lois's material services based upon her life expectancy, which was age 78. Smith explained that material services can be performed as long as a party "can get out of bed." Based upon information obtained from plaintiff, Smith learned that Lois cleaned, cooked, did laundry, did yard work, and helped pay the bills, spending around two to three hours a day doing those chores. In determining a value for material services, Smith calculated that the average wage was $14.99 an hour for those who perform household tasks such as painters, childcare workers, waiters and waitresses, private household cooks, laundry and dry cleaning workers, maids, housekeeping cleaners, auditing clerks, and taxi drivers and chauffeurs. Smith concluded that the tasks Lois performed fit within those categories and used the $14.99 hourly wage in his calculations.

¶ 9        At the close of Smith's cross-examination, defense counsel questioned Smith in order to submit an offer of proof. Smith testified that he did not take into account plaintiff's remarriage in calculating lost material services. Smith testified that the damages for loss of material services through the date of plaintiff's remarriage was $24,808.

¶ 10       With regard to plaintiff's remarriage, during plaintiff's cross-examination, plaintiff testified that he remarried in December 2015. On redirect examination, plaintiff testified over objection that his second marriage ended in divorce approximately 18 months later.

¶ 11       At the conclusion of the trial, the jury returned a verdict in favor of plaintiff and awarded plaintiff $2,121,914.34 in damages. The damage award was reduced to $1,697,531.48 based upon the jury's finding that Lois was 20% contributorily negligent. Included in the jury's breakdown of damages was $1,434,025 for the

"Value of Earnings and Household Services Lost and the present cash value of the Earnings and Household Services reasonably certain to be lost in the future." The award for lost earnings and lost household services did not distinguish between the amount awarded for each item.

¶ 12    Defendants filed a posttrial motion seeking a new trial or remittitur. Relevant to this appeal, defendants argued that the trial court had erred in denying their motion *in limine* seeking to limit damages for loss of material services to the date of plaintiff's remarriage. The trial court denied defendants' motion.

¶ 13    Defendants appealed, arguing, *inter alia*, that the trial court committed reversible error in denying their motion *in limine* and allowing the jury to consider damages for loss of material services beyond the date of plaintiff's remarriage. As in the trial court, defendants maintained that material services are part of a loss of consortium claim and, thus, terminate upon remarriage.

¶ 14    As discussed more fully *infra*, the appellate court concluded that a plaintiff's remarriage did not terminate loss of material services damages and affirmed the trial court. 2023 IL App (3d) 220232, ¶ 77.

¶ 15    This court subsequently allowed defendants' petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. Oct. 1, 2021). We also granted leave to the Illinois Defense Counsel to file a brief *amicus curiae* in support of defendants' position and to the Illinois Trial Lawyers Association to file a brief *amicus curiae* in support of plaintiff's position. See Ill. S. Ct. R. 345 (eff. Sept. 20, 2010).

¶ 16                                    ANALYSIS

¶ 17    In this court, defendants again argue that material services are included within loss of consortium damages and terminate upon a plaintiff's remarriage. The trial court therefore erred in denying defendants' motion *in limine* and allowing Smith to testify to the value of Lois's material services past the date of plaintiff's remarriage. Defendants ask this court to reverse the judgment of the appellate court and order a new trial on damages, limited to lost earnings and material services, or to order a remittitur, reducing the lost earnings/material services award to the amount of material services incurred up to the date of the plaintiff's remarriage.

¶ 18    Generally, a reviewing court will not reverse a trial court's decision on a motion *in limine* absent an abuse of discretion. *People v. Hanson*, 238 Ill. 2d 74, 96 (2010). However, where the motion *in limine* raises a question of law, a reviewing court applies a *de novo* standard of review. *Id.* The issue in this case involves a question of law. Our review, therefore, is *de novo*.

¶ 19    Historically, both statutory wrongful death actions and common-law loss of consortium actions allowed damages for the loss of material services performed by the deceased spouse. The claims did not overlap, because a plaintiff bringing a statutory wrongful death action could not seek damages for loss of consortium. See *Knierim v. Izzo*, 22 Ill. 2d 73 (1961) (court declined to recognize an action for loss of consortium as an additional remedy available to a widow in a wrongful death action).

¶ 20    Despite its earlier pronouncement, this court in 1982 again considered the issue of loss of consortium damages under the Act and held that a party could seek loss of consortium damages under the Act. *Elliott v. Willis*, 92 Ill. 2d 530 (1982). Following the *Elliott* decision, the appellate court held that, if damages for loss of consortium are sought in a wrongful death action and the plaintiff remarries, the plaintiff can only recover loss of consortium damages up to the time of the plaintiff's remarriage. *Carter v. Chicago & Illinois Midland Ry. Co.*, 130 Ill. App. 3d 431 (1985). Subsequently, the appellate court districts struggled with determining whether loss of material services damages terminated upon a plaintiff's remarriage in a wrongful death action. See *Dotson v. Sears, Roebuck & Co.*, 157 Ill. App. 3d 1036 (1987) (*Dotson I*); *Dotson v. Sears, Roebuck & Co.*, 199 Ill. App. 3d 526 (1990) (*Dotson II*); *Pfeifer v. Canyon Construction Co.*, 253 Ill. App. 3d 1017 (1993). The source of the confusion was the apparent disparate treatment of loss of material services damages in claims under the Act and common-law loss of consortium claims. Because our decision turns on the interplay of statutory wrongful death actions and common-law loss of consortium actions, we begin our analysis with a review of the case law.

¶ 21                           Wrongful Death Act

¶ 22    Concerning damages, the applicable version of the Act in this case provided:

"Every such action shall be brought by and in the names of the personal representatives of such deceased person, and, except as otherwise hereinafter provided, the amount recovered in every such action shall be for the exclusive benefit of the surviving spouse and next of kin of such deceased person. In every such action the jury may give such damages as they shall deem a fair and just compensation with reference to the pecuniary injuries resulting from such death, including damages for grief, sorrow, and mental suffering, to the surviving spouse and next of kin of such deceased person." 740 ILCS 180/2 (West 2014).

¶ 23     This court has long held that, in a wrongful death action, "one of the elements of pecuniary loss is the personal service of [the] deceased." *McFarlane v. Chicago City Ry. Co.*, 288 Ill. 476, 483 (1919). In *McFarlane*, the trial court instructed the jury that, if it found in favor of the plaintiff, it should allow such damages that would compensate the decedent's children "for such pecuniary loss and personal service she would have rendered them." (Emphasis omitted.) *Id.* at 482. The defendant objected to the inclusion of "personal service," arguing that personal service was not part of pecuniary loss. *Id.* In rejecting the defendant's argument, the court stated that, "[c]learly, one of the elements of pecuniary loss is the personal service of [the] deceased." *Id.* at 483.

¶ 24     Subsequently, this court again addressed pecuniary damages in a claim under the Act in *Allendorf v. Elgin, Joliet & Eastern Ry. Co.*, 8 Ill. 2d 164 (1956). In discussing damages, the court stated that recovery was proper for "services which the deceased husband may have performed about the home." *Id.* at 180. *Allendorf* observed that the decedent "was handy with tools and a good workman, capable of making improvements and repairs around the home that they had just purchased." *Id.* at 179. *Allendorf* stated that a jury could award damages for such intangibles, "because they relate to [the decedent's] earning power and his disposition to continue to contribute to the welfare of his family." *Id.* In reaching this conclusion, *Allendorf* cited *Michigan Central R.R. Co. v. Vreeland*, 227 U.S. 59, 71 (1913) (the word "pecuniary" "as judicially adopted is not so narrow as to exclude damages for the loss of services of the husband, wife, or child"), and *Ward v. Denver & Rio Grande Western R.R. Co.*, 85 P.2d 837, 849 (Utah 1939) ("A husband's services in the home often have a pecuniary value which it would cost money to replace, such as chores, marketing, and the like."). *Allendorf*, 8 Ill. 2d at 180.

¶ 25        This court has also long held that a plaintiff's remarriage cannot be considered in mitigation of damages in a wrongful death case. See *Chicago & Eastern Illinois R.R. Co. v. Driscoll*, 207 Ill. 9 (1903). *Driscoll* noted:

> " 'In an action by a husband to recover for the wrongful killing of his wife, in which one of the principal elements of damage is the loss to him of his wife's services, the defendant cannot show, in reduction of damages, that the plaintiff has married a second wife, who performs for him all the services rendered by his deceased wife.' " *Id.* at 16 (quoting 8 American and English Encyclopedia of Law 937 (2d ed. 1898)).

¶ 26        That the remarriage of a surviving spouse does not affect the damages recoverable for the wrongful death of the deceased spouse was reaffirmed in *Watson v. Fischbach*, 54 Ill. 2d 498, 500 (1973). At issue in *Watson* was whether the trial court had erred in informing jurors in the plaintiff's wrongful death action that the plaintiff had remarried and in allowing cross-examination of the plaintiff regarding her remarriage. *Watson* first noted that Illinois followed the majority of jurisdictions in holding that the remarriage of a surviving spouse does not affect the damages recoverable for the wrongful death of the deceased spouse. *Id. Watson* explained that prospective jurors could be informed during *voir dire* that the plaintiff had remarried, but no further exploration of the remarriage would be allowed. *Id.* at 503. In addition, the trial judge should instruct prospective jurors that the plaintiff's remarriage is not to be considered by them on the issue of liability or damages. *Id.* The plaintiff could request a similar, written instruction at the close of the case. *Id.* Because the fact of plaintiff's remarriage in *Watson* was not limited to *voir dire* and instead was described during cross-examination of plaintiff, the admission of that information constituted reversible error. *Id.* at 503-04.

¶ 27                                    Common-Law Loss of Consortium

¶ 28        Illinois courts have also long held that a plaintiff could recover damages for loss of material services in a common-law loss of consortium case. See *Blair v. Bloomington & Normal Ry., Electric & Heating Co.*, 130 Ill. App. 400, 403 (1906) (husband had a right to "recover damages for the loss of services and *consortium* of his wife occasioned by her injury").

¶ 29      In *Dini v. Naiditch*, 20 Ill. 2d 406 (1960), this court for the first time considered whether a wife could bring a claim for loss of consortium due to the negligent injury of her husband. *Dini* reviewed the arguments for and against allowing a wife to bring a loss of consortium action and noted one of the arguments against allowing such a cause of action was that the wife's cause of action might result in a double recovery for the same injury, because the husband would also be able to recover in his own action for his diminished ability to support his family. *Id.* at 426-27. *Dini* rejected that claim, explaining:

> "This argument emphasizes only one element of consortium—the loss of support. Consortium, however, includes *in addition to material services*, elements of companionship, felicity and sexual intercourse, all welded into a conceptualistic unity. [Citations.] Consequently, in this action the wife is not suing for merely loss of support, but for other elements as well. Any conceivable double recovery, however, can be obviated by deducting from the computation of damages in the consortium action any compensation given her husband in his action for the impairment of his ability to support." (Emphasis added.) *Id.* at 427.

¶ 30      Subsequent to *Dini*, this court again stated:

> "Loss of a spouse's companionship and related benefits of marriage, *as well as loss of material services* and unreimbursed expenses incurred because of the spouse's injury, are elements to be considered in assessing damages in a suit for loss of consortium." (Emphasis added.) *Manders v. Pulice*, 44 Ill. 2d 511, 516 (1970).

¶ 31                      Loss of Consortium in Wrongful Death Actions

¶ 32      As noted *supra*, this court in *Knierim*, 22 Ill. 2d 73, considered and rejected the plaintiff's claim that she could maintain an action for loss of consortium against a defendant in a statutory wrongful death claim. *Knierim* explained that *Dini* recognized a wife's claim for loss of consortium to protect the conjugal interest of the wife because damages to the wife's conjugal interest due to the negligent injury of her husband could not be recovered in an action by the husband. *Id.* at 81. No similar protection was needed under the Act. A claim under the Act was a separate

- 8 -

cause of action for the pecuniary loss that the widow and next of kin may have sustained by reason of the death of the decedent and was not the survival of an action the decedent would have had for his injuries. *Id.* at 81-82. *Knierim* concluded that the "differences between an action for loss of consortium resulting from the death of a husband and an action for pecuniary loss under the Wrongful Death Act are not sufficiently significant to warrant us recognizing the action for loss of consortium as an additional remedy available to the widow." *Id.* at 82-83.

¶ 33    This court reconsidered that position in *Elliott*, 92 Ill. 2d 530. Citing *Allendorf*, *Elliott* pointed out that, under the Act, a jury could award damages for such intangibles as the decedent's felicity and care as a father. *Id.* at 537. *Elliott* concluded that, just as felicity and care of a father are capable of evaluation as "pecuniary injuries" under the Act, the companionship and conjugal relationship of a spouse are equally compensable as "pecuniary injuries" under the Act. *Id.* at 538. The *Elliott* court explained:

> "It is true that damages for loss of consortium are not capable of being given the detailed in-depth analysis that an expert can be called upon to testify about in calculating a decedent's professional worth where future earnings of an individual employed in a particular field can be measured with precision and particularity. Just the same the damages for loss of a husband's society, companionship and sexual relations are not immeasurable. All of the elements that comprise what is considered to be loss of consortium may not be the most tangible items, but a jury is capable of putting a monetary worth on them. Therefore, to be consistent with the broad interpretation of 'pecuniary injuries' under the Wrongful Death Act [citation] we find loss of consortium to be included." *Id.* at 539-40.

¶ 34    The appellate court in *Carter*, 130 Ill. App. 3d 431, subsequently addressed a plaintiff's claim that the trial court had erred in its ruling concerning the plaintiff's remarriage in the plaintiff's statutory wrongful death action. The trial court had ruled that, if the plaintiff chose to seek damages concerning loss of consortium in the wrongful death action, the jury would be informed of the plaintiff's remarriage and would be instructed that loss of consortium damages could only be calculated up to the date of the plaintiff's remarriage. *Id.* at 435. If the plaintiff chose to delete the loss of consortium damage claim, evidence of the plaintiff's remarriage would

not be allowed into evidence. *Id.* The plaintiff chose not to pursue damages for loss of consortium. *Id.*

¶ 35     On appeal, the plaintiff argued that *Watson* controlled, so that his remarriage was irrelevant to his claim for loss of consortium damages under the Act. *Id.* at 436. The plaintiff argued that the *Elliott* decision, holding that loss of consortium should be included as an element of damages in a wrongful death case, did not limit the *Watson* decision concerning remarriage. *Id.* The appellate court disagreed, concluding that when this court announced the new rule in *Elliott*, "all prior authority in conflict therewith becomes enervated, whether specifically or *sub silentio*." *Id. Carter* did not otherwise specify how *Watson* conflicted with *Elliott*, nor did *Carter* cite case law holding that loss of consortium damages terminated upon a plaintiff's remarriage. Nonetheless, based upon its finding that *Elliott* implicitly overruled *Watson*, *Carter* held that if a claim for loss of consortium damages is brought in a wrongful death action, damages for loss of consortium could be recovered only for the period up to the plaintiff's remarriage. *Id.*

¶ 36     The "*Carter* rule," as it became known, was incorporated into the Illinois Pattern Jury Instructions, Civil, No. 31.04 (rev. June 18, 2021) (hereinafter IPI Civil No. 31.04). IPI Civil No. 31.04 addresses the measure of damages for an adult decedent in a wrongful death action. If the surviving spouse has remarried, the court is to include in the instruction that the "[Widow/widower] is not entitled to damages for loss of [decedent's] society and sexual relations after [date of remarriage]." *Id.*

¶ 37                      *Dotson I*, *Dotson II*, and *Pfeifer*

¶ 38     With that background in mind, we turn to the decisions of the appellate court addressing whether damages for loss of material services in a wrongful death claim terminate upon a plaintiff's remarriage. The appellate courts struggled with reconciling *Watson*, *Elliott*, and *Carter*, particularly *Watson*'s holding that a plaintiff's remarriage was irrelevant to a determination of damages under the Act, and *Carter*'s holding that loss of consortium damages terminate upon remarriage in cases under the Act. Because material services were included as damages in both statutory wrongful death actions and common-law loss of consortium claims, the appellate court considered whether, with the incorporation of loss of consortium

damages into the Act, those damages were calculated pursuant to *Watson* or *Carter* when the plaintiff had remarried.

¶ 39    In *Dotson I*, 157 Ill. App. 3d at 1043, the plaintiff withdrew his loss of consortium claim to keep the fact of his remarriage from the jury but was allowed to introduce evidence in support of his claim for loss of material services. The *Dotson I* court found that the trial court had erred in allowing the plaintiff to proceed with his claim for loss of material services. The court stated, "a loss of consortium claim includes a claim for loss of material services." *Id.* The *Dotson I* court construed *Elliott* and *Carter* as incorporating a claim for loss of material services into a loss of consortium claim in a wrongful death action. *Id.* at 1044. The *Dotson I* court concluded that

> "material services have always been a component of a claim for loss of consortium and *** the allowance of their recovery in wrongful death actions prior to *Elliott* was a necessary departure from this general rule. We further conclude that *Elliott* mandates a finding that material services are now recoverable in wrongful death actions only as part of a loss of consortium claim." *Id.*

¶ 40    The *Dotson I* court also held that, to the extent the trial court had allowed the plaintiff to bring a claim for loss of material services, the trial court should have allowed evidence of the plaintiff's remarriage. *Id.* at 1045. In reaching that conclusion, the *Dotson I* court disagreed with the plaintiff's argument that the "claim for loss of consortium recognized in *Elliott* and as to which remarriage was held relevant in *Carter* does not include material services." *Id.*

¶ 41    In *Dotson II*, 199 Ill. App. 3d 526, the plaintiff appealed following the retrial of his case upon remand and again argued that the trial court should have instructed the jury that the plaintiff's remarriage did not mitigate his damages for the loss of his deceased wife's material services. The *Dotson II* court rejected the plaintiff's claim as an attempt to relitigate an issue decided against him in *Dotson I*. The *Dotson II* court reiterated that "after *Elliott* remarriage limits a claim for material services as much as it limits any other element of consortium." *Id.* at 531.

¶ 42    In *Pfeifer*, 253 Ill. App. 3d at 1026, the trial court granted the defendant's motion *in limine* seeking to bar evidence of loss of support to the decedent's wife

from the date of her remarriage. On appeal, the plaintiff argued that her claim for loss of support did not abate when she remarried. *Id.* The defendant relied on the *Dotson* decisions in arguing that the loss of financial support, like the loss of material services, terminated upon remarriage. *Id.* at 1027. The *Pfeifer* court agreed with the *Dotson* courts that material services were properly included as part of consortium but disagreed with the defendant that financial support also was included in consortium. *Id.* at 1030. *Pfeifer* noted that the pecuniary damages recoverable under the Act have traditionally included loss of financial support. *Id.* The defendant could not escape application of the rule by attempting to recast financial support as a type of material services. *Id.* at 1027-28.

¶ 43                                 The Instant Case

¶ 44        Reviewing the preceding cases, the appellate court in the instant case declined to follow the *Dotson* decisions. 2023 IL App (3d) 220232, ¶ 75. The appellate court found that the *Dotson* courts erroneously interpreted *Elliott* as limiting the relief available under the Act when, in fact, *Elliott* was intended to expand the relief available under the Act by eliminating the need for a separate loss of consortium claim. *Id.* The appellate court also stated that the *Dotson* decisions potentially eliminated or changed the character of previously available relief for one class of litigants but not for another. *Id.* The appellate court explained that, under the analysis of the *Dotson* courts, a plaintiff spouse's claim for loss of material services in a wrongful death action was subject to termination if the plaintiff remarried. *Id.* In contrast, a next of kin plaintiff, such as a child or parent, could seek damages for loss of material services in the wrongful death action without limitation. *Id.*

¶ 45        The appellate court therefore held:

> "when a plaintiff chooses to seek damages for loss of consortium within a statutory wrongful death action, the classic elements of a statutory wrongful death action—loss of financial support and loss of material services—are preserved and remain subject to the supreme court's holding that remarriage must not affect the jury's determination of damages. *Watson*, 54 Ill. 2d at 500. The remaining elements of a loss of consortium claim, including 'society, guidance, companionship, felicity and sexual relations,' remain subject to the *Carter* rule of termination upon remarriage." *Id.* ¶ 69.

¶ 46    In this court, defendants rely on the *Dotson* decisions and *Pfeifer*, arguing that those courts correctly held that loss of material services flows from the marital relationship and cannot be separated from loss of consortium. Defendants also point to *Dini*, which stated that loss of consortium includes "material services." See *Dini*, 20 Ill. 2d at 427. Because loss of material services is included in the loss of consortium claim, those damages are limited in the event the plaintiff spouse remarries.

¶ 47    We disagree. For more than a century, a plaintiff has been able to claim loss of material services damages in a wrongful death action. Consequently, there was no need to incorporate material services into the loss of consortium claim recognized in *Elliott*. Notably, *Elliott* did not include material services in the loss of consortium claim it described. In reconsidering the exclusion of loss of consortium damages, *Elliott* determined that, although damages for "loss of a husband's *society, companionship and sexual relations*" were not the "most tangible items," the jury could put a monetary worth on them. (Emphasis added.) *Elliott*, 92 Ill. 2d at 540. Consequently, *Elliott* found that, to be consistent with the "broad interpretation of 'pecuniary injuries' under the Wrongful Death Act," loss of consortium damages should be included in determining the damages to be recovered. *Id. Elliott* concluded that the jury had not been properly instructed on the measure of damages when it was told it could not consider the " 'loss of decedent's society by the widow and next of kin.' " *Id.* at 541 (quoting Illinois Pattern Jury Instructions, Civil, No. 31.07 (2d ed. 1971)). *Elliott* held that, in determining the pecuniary value of a spouse under IPI Civil No. 31.04, "the *society, companionship and conjugal relationship* that constitute loss of consortium are factors that the jury may consider." (Emphasis added.) *Id.*

¶ 48    The *Dotson I* court acknowledged that neither *Elliott* nor *Carter* explicitly held that a "claim for loss of a spouse's material services is henceforth incorporated into the now recoverable claim for loss of consortium in a wrongful death action" but concluded that those decisions must be construed as having done so. *Dotson I*, 157 Ill. App. 3d at 1044. *Dotson I* based its conclusion on the fact that *Elliott* affirmed an appellate court decision that held that the trial court should have given an instruction on loss of consortium, which the appellate court described as "lost services, society, companionship and sex." *Elliott v. Willis*, 89 Ill. App. 3d 1144, 1145 (1980). In addition, in stating that consortium included "society, guidance,

- 13 -

companionship, felicity and sexual relations" (*Elliott*, 92 Ill. 2d at 535), *Elliott* cited *Dini*, which described consortium as including, "in addition to material services, *** companionship, felicity and sexual intercourse" (*Dini*, 20 Ill. 2d at 427-28). From these citations, the *Dotson I* court concluded that *Elliott* "mandates a finding that material services are now recoverable in wrongful death actions only as part of a loss of consortium claim." *Dotson I*, 157 Ill. App. 3d at 1044.

¶ 49     We disagree with the *Dotson I* court's suggestion that *Elliott*'s omission of material services from the description of loss of consortium damages now recoverable in a wrongful death action was inadvertent. As stated, there was no reason for the *Elliott* court to include those damages in the loss of consortium damages it was incorporating into the wrongful death cause of action because those damages had long been recoverable in a wrongful death case. As the appellate court in this case explained, *Elliott* was intended to expand the relief available under the Act to include loss of consortium damages that previously had been excluded from the Act. The loss of consortium damages that had been excluded from the Act were those set forth in *Elliott*: the plaintiff's loss of the decedent's society, companionship, and conjugal relationship.

¶ 50     We agree with the appellate court that to hold otherwise potentially results in the disparate treatment of plaintiff spouses versus next of kin plaintiffs in claims under the Act. The Act provides that the "amount recovered in every such action shall be for the exclusive benefit of the surviving spouse and next of kin of such deceased person." 740 ILCS 180/2 (West 2014). As the appellate court correctly observed, applying the analysis of the *Dotson* courts, a plaintiff spouse seeking material services damages would have to pursue those damages as part of loss of consortium damages, which would be subject to a limitation in damages if he or she remarries. In contrast, a plaintiff child or parent could seek material services damages under the Act, and those damages would not be subject to limitation. Such a holding would be contrary to the *Elliott* court's expansion of the damages available under the Act.

¶ 51     Having determined that loss of material services damages remain an element of pecuniary damages under the Act, it follows that *Elliott* did not overrule *Watson* with respect to those damages. *Elliott* did not announce a new rule of law concerning material services. *Watson*, 54 Ill. 2d at 500, held that the plaintiff's

remarriage, or the possibility thereof, does not affect the damages recoverable for the wrongful death of the decedent. Material services remain an element of damages recoverable under the Act and, therefore, do not end upon a plaintiff's remarriage. For those reasons, we overrule the courts in *Dotson* and *Pfeifer* to the extent those courts held that (1) material services are included in the loss of consortium damages recognized in *Elliott* and (2) material services damages are subject to the *Carter* court's limitation on loss of consortium damages where the plaintiff spouse has remarried.

¶ 52     Finally, we note that, because remarriage was not at issue in *Elliott*, the court did not address the effect of remarriage on the now-included loss of consortium damages in wrongful death cases. This court has never addressed *Carter*'s holding that damages for loss of consortium in wrongful death cases can be recovered only up to the time of a plaintiff's remarriage and that *Elliott* overruled *Watson* with regard to those damages. *Amicus* the Illinois Trial Lawyers Association asks this court to overrule *Carter*, arguing that *Carter* was wrongly decided. *Amicus* also asks that this court hold that evidence of remarriage should be barred for all aspects of consortium damages arising out of a spousal death.

¶ 53     Defendants correctly respond that an *amicus* takes the case as it finds it, with the issues framed by the parties. *Oswald v. Hamer*, 2018 IL 122203, ¶ 41. *Oswald* noted that this court has repeatedly rejected attempts by *amici* to assert issues not raised by the parties. *Id.* In this case, the parties agreed that the *Carter* rule concerning remarriage applied to plaintiff's loss of consortium claim, disagreeing only over the issue of whether the *Carter* rule applied to plaintiff's claim for loss of material services. Accordingly, because the validity of the *Carter* rule concerning the effect of remarriage on loss of consortium damages was not raised by the parties, we decline to now consider that issue in this appeal.

¶ 54                                    CONCLUSION

¶ 55     For the foregoing reasons, we hold that, in a claim under the Act, a plaintiff's remarriage does not affect the damages recoverable for the loss of a decedent's material services. We therefore affirm judgment of the appellate court, which affirmed the trial court's order denying defendant's motion *in limine* seeking to limit the testimony of plaintiff's expert witness regarding plaintiff's loss of material

- 15 -

services damages to the period preceding plaintiff's remarriage.

¶ 56        Judgments affirmed.

¶ 57        JUSTICE O'BRIEN took no part in the consideration or decision of this case.